STATE OF NEBRASKA EX REL. CONNIE THOMPSON, APPELLANT, V. WALTER ALDERMAN, SECRETARY OF THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1 OF HOWARD COUNTY, NEBRASKA, ET AL., APPELLEES, ST. PAUL EDUCATION ASSOCIATION ET AL., INTERVENORS-APPELLEES.

431 N.W.2d 625

Filed November 18, 1988.    No. 87-056.

Alan E. Peterson and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

John F. Recknor, of Barlow, Johnson, DeMars & Flodman, and Mark D. McGuire, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellees and intervenors-appellees.

Robert A. Bligh for amicus curiae Nebraska Association of School Boards.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This action was commenced to obtain a writ of mandamus to compel the respondent Walter Alderman, as secretary of the board of education of school district No. 1 in Howard County, Nebraska, to publish the "individually itemized salaries paid or allowed by the Board for any and all employees, including teachers, setting forth the name of the claimant, the amount, the nature of the claim allowed consisting of not more than ten words in the stating of the nature of the claim" in a legal newspaper published in Howard County, Nebraska. The school district was also joined as a respondent.

The relator, Connie Thompson, is a resident and taxpayer of Howard County and is the editor of the Phonograph-Herald, a legal newspaper published in Howard County. The St. Paul Education Association, an association of the certificated teaching employees of the school district and the collective bargaining agent for the teachers, and Noel G. Olin, president of the association, intervened in the action supporting the position of the respondents.

The relator relies upon Neb. Rev. Stat. § 79-805 (Reissue 1987), which is applicable to Class III school districts such as the respondent and which requires the secretary of the board to publish, within 10 days after each meeting, "a list of the claims arising on contract or tort, allowed thereat, setting forth the name of the claimant, the amount, and nature of the claim allowed . . . ."

The trial court found that the evidence failed to show that the board of education "in any manner takes action on the payroll of any employees of respondent nor does it show in any manner that any employee presents any claim on his or her own behalf

within the meaning of §79-805 R.R.S. 1943," and found that the relator had failed to prove that any claim arising out of contract or tort and allowed by the board had not been published as required by § 79-805. The petition of the relator was dismissed. The relator has appealed.

The record presents no issue of fact. The sole question presented is whether the statute in question, § 79-805, requires the secretary of the board to publish a list of the salaries of the employees of the school district.

Section 79-805 is very specific and requires only that a list of the "claims" allowed at a meeting of the board be published. Unless the salaries of the employees of the school district constitute claims allowed by the board, the relator is entitled to no relief.

Mandamus is an extraordinary remedy, not a writ of right, and will issue only when the duty to act is clear. *State ex rel. School Dist. v. Board of Equalization*, 166 Neb. 785, 90 N.W.2d 421 (1958); *State ex rel. Krieger v. Board of Supervisors*, 171 Neb. 117, 105 N.W.2d 721 (1960).

The relator's briefs reveal some of the difficulty there is in ascertaining what the "clear duty" is that the respondents are supposed to have. In the appellant's original brief the relator states, at 4, that the board must publish the individual salaries either monthly or annually. In her reply brief at 5, the relator states that all payments to employees "constitute claims which must be published." But, at 6, the relator states that the publication must be made "at the time the contracts are approved."

The fact is, there is no duty, much less a clear duty, to publish the individual salaries of the employees of the district at any time.

The salary schedule for the certificated employees of the district is negotiated by the St. Paul Education Association, the collective bargaining unit for the teachers. The salary schedule determines the salaries for teachers according to their experience and postbaccalaureate education. A teacher is placed on the salary schedule by an administrative procedure within the superintendent's office; the school board has nothing to do with the placement of teachers on the salary schedule.

Individual teachers' salaries are not approved by any school board action.

The record shows that in the summer of 1986, the board of education approved a new salary schedule for the certificated staff, approved raises for the principals and the superintendent, and approved raises for all other employees. The base pay for the salary schedule was printed in the St. Paul Phonograph-Herald on July 23, 1986, and the amounts of the other raises were printed on August 20, 1986.

The noncertificated employees, the principals of the elementary and high schools, and the superintendent all negotiate their salaries individually. New salaries are approved and published by lump sums for groups of noncertificated employees.

All payroll checks are prepared by the educational service unit in Kearney. The board does not approve each employee's paycheck. No teacher or other staff member has ever presented a claim for his or her salary during the 19-year tenure of the superintendent.

The central issue in this case is the meaning of the word "claims" as it is used in § 79-805, which provides:

> It shall be the duty of the secretary of such board of education, within ten days after any regular or special meeting thereof to publish one time in a legal newspaper published in or of general circulation in such city or village a list of the claims arising on contract or tort, allowed thereat, setting forth the name of the claimant, the amount, and nature of the claim allowed . . . .

There is no mention in § 79-805 of a requirement that individual salaries be published.

It is an accepted rule of statutory construction that

> [s]tatutory language should be given its plain and ordinary meaning . . . and where the words of a statute are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning. . . . Further, it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.

(Citations omitted.) *Sorensen v. Meyer*, 220 Neb. 457, 462-63, 370 N.W.2d 173, 177 (1985).

The word "claim" suggests that some type of action is necessary by the person seeking payment, such as submitting some type of invoice or statement to the school board in order to receive the payment due. Webster's Third New International Dictionary, Unabridged 414 (1981) defines the word as "an authoritative or challenging request" or a "demand for compensation, benefits, or payment." Black's Law Dictionary 224 (5th ed. 1979) defines the word in the legal context: "To demand as one's own or as one's right; to assert; to urge; to insist."

Although there is no general statutory procedure for filing claims against school districts, such as Neb. Rev. Stat. § 23-135 (Cum. Supp. 1988) applicable to counties, see *Jackson v. County of Douglas*, 223 Neb. 65, 388 N.W.2d 64 (1986), the St. Paul school board publishes its actions on "claims" regularly. These include claims for payment of bills for school supplies, subscriptions for magazines, paint, bus repairs, gasoline, fuel, fertilizer, mileage, utilities, books, drapes, dues, etc. As Superintendent Ringlein testified, these claims are presented to the district's bookkeeper, who writes out the claims on a sheet and sends them to the educational service unit in Kearney, which prepares the checks. The service unit returns the claims, and they are taken to the next board meeting and submitted to the board for payment. These claims are subject to the specific approval of the board. The superintendent testified that from time to time a claim has been postponed in order to determine whether claim presented to the district was justified.

This procedure is entirely different from the procedure used in establishing salaries and paying teachers and other school employees. In fact, for those school district employees subject to the collective bargaining agreement, the bargaining agent negotiates for the salary and benefits paid to teachers. Individual teachers at no time bargain for their salaries, and they do not present claims or requests for payment of their salaries.

Noncertificated employees bargain individually for their salaries, but they are paid on the basis of the position they hold,

not on the basis of who they are. They do not present claims for payment of salaries, nor does the school board approve the payroll or checks as they are issued each month.

Clearly, as the word "claim" is understood in its ordinary sense, the employees of the school district do not present claims for which they demand payment and upon which the school board must act before the employees receive their pay.

In addition to the plain language of the statute, support for appellee's position is found in the Attorney General's opinion, published in 1947, at the time the act was passed. That opinion states: "We think it clear that some action of the board is contemplated, in other words, if no action of the board was taken in allowance of a claim then no publication need be made, if some action was taken then publication must follow." Rep. of the Att'y Gen. of Neb. 281, 282 (1947-1948).

The record in this case shows that, at every relevant time when the board took action, a publication was made. When the new salary schedule was adopted for teachers, with a base salary of $13,900, that figure was published as part of the proceedings of the school board. When the raises for noncertificated staff, the principals, and superintendent were approved by the board, the amount of those raises was published. But because no claim is ever made for individual salaries, no board action was necessary, no board action was taken, and no publication was necessary.

The purpose of § 79-805 is to provide information for the public about how school district funds are being spent. The publication which the school district presently makes, including the base salary being paid, the amount of any raises for personnel, and all claims allowed is more than sufficient to satisfy the requirements of § 79-805. The individual contracts for all school district employees are available for public inspection. Also, the record shows the superintendent has mailed copies of the lists of salaries to persons requesting them and had furnished copies to the relator.

The Legislature requires county boards in counties having less than 150,000 inhabitants to publish, once a year, the names of all employees and their salaries or hourly wages. Any change in those amounts and any additional employees must also be

published. On a month-to-month basis, the county board is allowed to publish the payroll as an aggregate sum. Neb. Rev. Stat. § 23-122 (Reissue 1987). Other agencies such as public power districts are required specifically to publish the salaries of their officers. Neb. Rev. Stat. § 70-624 (Reissue 1986). The Legislature has not placed such a duty on school boards. Absent an affirmative duty to publish the individual salaries of teachers and school district employees, school boards are not required to publish the individual salaries of school district employees.

The record shows no clear duty on the part of the respondent Alderman such as to entitle the relator to mandamus.

The judgment of the district court is affirmed.

AFFIRMED.

HASTINGS, C.J., not participating.