STATE OF NEBRASKA EX REL. DONALD W. PEDERSON ET AL.,
APPELLEES, V. SAM J. HOWELL, TREASURER OF DOUGLAS COUNTY,
NEBRASKA, APPELLEE, JAMES GOODBOUT ET AL., APPELLANTS.

474 N.W.2d 22

Filed September 6, 1991.    No. 89-046.

Steven J. Riekes, of Richards, Riekes, Brown & Zabin, P.C., for appellants.

Brian J. Muench, of Thompson, Crounse, Pieper and Brumbaugh, P.C., and Dennis E. Martin, of Martin & Martin, for appellees Pederson and Westendorfs.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

FAHRNBRUCH, J.

The trustees of Sanitary and Improvement District No. 272 of Douglas County (S.I.D.) appeal a trial court's (1) overruling of their demurrer, (2) refusal to abate or continue these proceedings until prior pending litigation had been finally determined, and (3) order for issuance of a writ of mandamus requiring the appellants to pay approximately $104,000 plus interest to certain S.I.D. warrant holders.

Because the district court for Douglas County erred in overruling the trustees' demurrer and in refusing to abate these proceedings or to continue them until prior pending litigation had been finally determined, and because a writ of mandamus was prematurely ordered, we reverse the decision and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

At the time of the filing of relator appellees' petition in the district court, the respondents James Goodbout, Rick Cushing, Lori Van Fleet, Patrick J. Burns, and John M. Murphy were the trustees of S.I.D. During the course of the proceedings, Kathleen Sullivan, Greg Jung, and Kurt Wolfert became members of the S.I.D. board of trustees and replaced Cushing, Van Fleet, and Murphy as respondents in this action.

This is the second appeal to this court regarding the construction of an in-ground green space irrigation system installed in three parks within S.I.D., also known as the Willow

Wood subdivision, in Douglas County, Nebraska. The first action is reported at *S.I.D. No. 272 v. Marquardt*, 233 Neb. 39, 443 N.W.2d 877 (1989) (*S.I.D. I*). This court takes judicial notice of that case. See *First Nat. Bank v. Chadron Energy Corp.*, 236 Neb. 199, 459 N.W.2d 736 (1990) (where cases are interwoven and interdependent, and the controversy has already been considered and determined in a prior proceeding involving one of the parties now before the court, the court has a right to examine its own records and take judicial notice of its own proceedings and judgment in the prior action).

Trial was held in this second action (*S.I.D. II*) on the basis of stipulations and exhibits, including depositions. Those stipulations and exhibits reflect that in late 1983, M & A Special Mowing submitted a bid and subsequently received a 2-year contract to water three parks in Willow Wood. According to Francis Sullivan, the former chairman of the S.I.D. board of trustees, he received, free of charge, bushes and approximately $1,200 in lumber for a deck at his home in exchange for informing M & A of a competitor's bid in regard to the watering contract.

In January 1984, M & A proposed an underground sprinkler system to water the Willow Wood parks. The watering had previously been done through hoses and sprinkler heads that were attached to fire hydrants and moved around. According to one contractor, the cost of the sprinkler system was so much lower than the cost of the watering contract that the contractors were able to further mark up the sprinkler system price in exchange for losing the watering contract. Sullivan testified he was to receive $5,000 to help push the proposal through the S.I.D. board. Sullivan did, in fact, receive yard lighting, a trip to Houston, and $400 to $500 in cash. The board accepted the proposal on March 22, 1984. According to Sullivan, another trustee received, free of charge, an underground sprinkler system for his home for remaining silent and approving a later addendum to the contract on September 5, 1984, which was recorded in the board's minutes of March 25, 1985.

Capital improvements to public parks within a sanitary and improvement district require the approval of the municipality or county which has zoning jurisdiction. Neb. Rev. Stat.

§ 31-740 (Reissue 1984). Additional statutory requirements include notice and public bidding, formal resolution and acceptance of the work, plans, specifications, a certificate of acceptance, and a statement of costs made and filed by the district's engineer. See, Neb. Rev. Stat. §§ 31-741, 31-744, 31-745, 31-747, 31-748, 31-749, and 31-755 (Reissue 1988). In 1982, approval of a similar underground sprinkler system had been denied S.I.D. by the city of Omaha. In order to avoid the requirement of obtaining city approval of the current underground sprinkler system, the proposal was termed a "watering contract" and was to be paid over a 2-year period, similarly to the payments on the original watering contract. By this means, the then S.I.D. board of trustees circumvented the statutory requirements for capital improvements. It was Sullivan's opinion and that of the installing contractor that S.I.D. overpaid for the sprinkler system. Sullivan testified the price was inflated by the inclusion of bribes in the contract price and the avoidance of public bidding. The installing contractor said he could have installed the system more cheaply. The total contract price was $171,833.10. There is evidence that the total contract price should have not exceeded approximately $117,118. There is other evidence that the grass within the parks is a drought-resistant type which does not require any water other than that which occurs by natural rainfall in eastern Nebraska, and that at the time of trial, May 24, 1988, the installed sprinkler system had not been used since the fall of 1985.

To pay for this sprinkler system, warrants were issued to M & A. Warrants are investment securities under article 8 of the Uniform Commercial Code in the form of short-term interest-bearing orders payable on a specified date. They are issued by the board of trustees or administrator of a sanitary and improvement district to be paid from funds expected to be received in the future, including, but not limited to, property tax collections, special assessment collections, and proceeds of sale of general obligation bonds. Neb. Rev. Stat. § 31-727(5)(d) (Reissue 1984). These warrants were sold by the contractor to PaineWebber, Inc., a financial consulting firm, which resold them to various holders, including the relator appellees.

On October 21, 1986, after details of the sprinkler system transactions came to light, S.I.D., through a board of trustees consisting of at least one new member, filed a petition for declaratory judgment (see *S.I.D. I*) in the district court for Douglas County. Named as defendants were several purported contractors, the former S.I.D. trustees, and 21 warrant holders, which included two "Doe" defendants. S.I.D. claimed that the sprinkler contracts were illegal and asked that the Douglas County treasurer, as ex officio treasurer of S.I.D., be enjoined from paying the challenged warrants and that the warrants be declared void. S.I.D.'s new board of trustees had ordered the treasurer not to pay the challenged warrants. On July 31, 1987, the district court sustained general and special demurrers filed by 15 of the warrant holders, including the 3 named warrant holders in *S.I.D. II*. In *S.I.D. I,* the trial court found that S.I.D.'s petition failed to state a cause of action against the warrant holders and that it contained a misjoinder of parties and causes of action. The S.I.D. appealed these rulings to this court.

While waiting for a decision from this court in the appeal of *S.I.D. I*, some of the warrant holders, on August 25, 1987, filed in the district court for Douglas County this action (*S.I.D. II*) for a writ of mandamus. All of the plaintiff warrant holders in *S.I.D. II* were defendants in *S.I.D. I* who had had their demurrers sustained at the trial level.

In this mandamus action, the warrant holders sought (1) to compel the new S.I.D. board members to call the warrants and to withdraw the resolution ordering the treasurer not to pay the warrants, and (2) to compel the treasurer to pay the warrants in accordance with Neb. Rev. Stat. §§ 77-2201 et seq. (Reissues 1986 & 1990). The S.I.D. trustees filed a demurrer, stating, in essence, that (1) another action was pending on the same cause, (2) the facts alleged were insufficient to state a cause of action, and (3) the trial court had no jurisdiction. The demurrer was overruled.

On January 19, 1988, the S.I.D. board passed a resolution reaffirming two earlier orders of the board directing the treasurer not to pay the challenged warrants, but, rather, to escrow the funds because of the pending litigation. Prior to trial

56

in *S.I.D. II*, the S.I.D. trustees filed a motion to abate or continue the present action until the proceedings in *S.I.D. I* were resolved. This motion was also overruled. On May 24, 1988, trial was had in *S.I.D. II*. On December 28, 1988, the district court, without reciting any specific findings of fact, granted the writ of mandamus requested by the warrant holders. The S.I.D. trustees timely appealed to this court.

Mandamus is defined as an extraordinary remedy, not a writ of right, *State ex rel. Thompson v. Alderman*, 230 Neb. 335, 431 N.W.2d 625 (1988), issued to compel the performance of a purely ministerial act or duty, *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990), imposed by law upon an inferior tribunal, corporation, board, or person, see Neb. Rev. Stat. § 25-2156 (Reissue 1989), where (1) the relator has a clear legal right to the relief sought; (2) there is a corresponding clear duty existing on the part of the respondent to do the act in question, *State ex rel. Mercurio v. Board of Regents*, 213 Neb. 251, 329 N.W.2d 87 (1983), *cert. denied* 463 U.S. 1214, 103 S. Ct. 3554, 77 L. Ed. 2d 1400; and (3) there is no other plain and adequate remedy available in the ordinary course of law, *State ex rel. PROUD v. Conley*, 236 Neb. 122, 459 N.W.2d 222 (1990).

In regard to the first assignment of error, that the trustees' demurrer was overruled, Neb. Rev. Stat. § 25-806 (Reissue 1989) provides: "The defendant may demur to the petition only when it appears on its face . . . (3) that there is another action pending between the same parties for the same cause . . . or (6) that the petition does not state facts sufficient to constitute a cause of action."

The face of the petition clearly reflects that *S.I.D. I* was pending at the time the petition in *S.I.D. II* was filed. Further, there is nothing in the *S.I.D. II* petition from which it can be inferred that the warrant holders gave value for the warrants. Without such an allegation in the petition, the petition fails to allege facts sufficient to state a cause of action, nor does it allege sufficient facts to claim a clear duty on the part of the treasurer to pay the warrants. See *S.I.D. I* for requirement that the warrants must be obtained for value for warrant holders to be bona fide purchasers. The trial court erred in failing to sustain

the appellant trustees' demurrer, which the trustees preserved in their answer.

Application of legal and equitable principles as they relate to the issuance of a writ of mandamus also requires that the trial court be reversed.

While a writ of mandamus may be utilized to enforce payment of warrants issued by a governmental body, see *State, ex rel. Warren, v. Raabe*, 140 Neb. 16, 299 N.W. 338 (1941), the facts in this case reflect (1) that in the interest of equity and judicial economy a writ of mandamus was prematurely ordered in this case and (2) that the trial court erred in failing to abate or continue *S.I.D. II* until a final determination had been made in *S.I.D. I*.

Appellants' second assignment of error, that the trial court erred in denying their motion to abate or continue the proceedings in *S.I.D. II* until *S.I.D. I*, which was pending in the Supreme Court, had been finally determined, also has merit. As stated, relator appellees' *S.I.D. II* petition alleged that *S.I.D. I* was pending in the Supreme Court when appellees filed *S.I.D. II*, and S.I.D.'s trustees properly pleaded their plea in abatement and motion to continue. The main purpose of abating a civil action is to prevent unnecessary or vexatious litigation, the theory of our civil procedure being to avoid a multiplicity of suits. See *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989).

"A plea in abatement does not go to the merits of an action, but, by presentation of facts extrinsic to the merits of an action, demonstrates irregularities or circumstances which preclude further prosecution of the action or require suspension of the proceedings." *Williams v. Gould, Inc.*, 232 Neb. 862, 872, 443 N.W.2d 577, 584 (1989). A defendant may file a plea in abatement when there is another action pending between the same parties, involving the same or substantially the same subject matter, cause of action, and relief. *Kash v. McDermott & Miller*, 221 Neb. 297, 376 N.W.2d 558 (1985). See, also, *Miller v. Miller*, 213 Neb. 219, 328 N.W.2d 210 (1982); *National Bank of Commerce T. & S. Assn. v. Shull*, 195 Neb. 590, 239 N.W.2d 505 (1976). As a general rule, where a judgment in a prior suit would be a bar to a judgment in the second suit brought in the

same or another court of concurrent jurisdiction, the plea in abatement should be sustained. *Germer, supra*; *Shull, supra.* See, also, *Jourdon v. Commonwealth Co.*, 169 Neb. 482, 100 N.W.2d 84 (1959); *State, ex rel. C., B. & Q. R. Co., v. N. Lincoln St. Ry. Co.*, 34 Neb. 634, 52 N.W. 369 (1892) (the plea of the pendency of another suit in bar is applicable to proceedings in mandamus). Granting the appellants' motion for a continuance of the proceedings in *S.I.D. II* until *S.I.D. I* was finally decided would have served the same purpose as a plea in abatement. Since a declaratory judgment adverse to the warrant holders in *S.I.D. I* would bar the writ of mandamus in *S.I.D. II*, the trial court erred in failing to sustain appellants' plea in abatement and motion for continuance.

This court has also recognized the equitable principle that where the issuance of a writ of mandamus would disturb official action *or create disorder or confusion*, it may be denied, and this is so even when the petitioner has a clear legal right for which mandamus would be an appropriate remedy. *State ex rel. Goetz v. Lundak*, 199 Neb. 585, 260 N.W.2d 589 (1977). At the time the writ of mandamus was ordered in *S.I.D. II*, it was clear that the issuance of a writ of mandamus under the posture of this case and *S.I.D. I* could create disorder or confusion, particularly if this court, in *S.I.D. I*, should set aside the trial court's ruling in *S.I.D. I* and remand *S.I.D. I* to the trial court for determination of the validity of the warrants, which is precisely what this court in fact did. See *S.I.D. I*. The underlying issue in both *S.I.D. I* and *S.I.D. II* is whether the outstanding warrants are valid in the hands of the warrant holders. Permitting the same cause of action to be adjudicated in two separate cases at the same time obviously can only result in disorder and confusion in a judicial system.

To warrant the issuance of a writ of mandamus against an officer to compel the officer to act, the duty to act must (1) be imposed on the officer by law, (2) still exist at the time the writ is applied for, and (3) be clear. *State ex rel. PROUD v. Conley*, 236 Neb. 122, 459 N.W.2d 222 (1990). In the context of *S.I.D. I* and *S.I.D. II*, in order for the duty to act to be clear and for mandamus to become a proper remedy for the warrant holders, a final judicial determination must be made that the warrants in

the hands of the plaintiffs are valid. At the time the warrant holders filed *S.I.D. II*, a final judicial determination had not been made as to the validity of the warrants in question, nor had it been judicially determined that the trustees and the treasurer had a clear duty to act.

In their argument relative to their final assignment of error the appellants ask this court to determine whether the warrants are valid. Despite the apparent need for such a determination, this action is not appropriate for that purpose. Having concluded that the issuance of the writ of mandamus in *S.I.D. II* should not have been ordered, we need go no further. Resolution of the validity of the warrants is a proper subject of the declaratory judgment proceeding (*S.I.D. I*), not this mandamus proceeding.

From the foregoing analysis, we conclude that the issuance of a writ of mandamus in this action was premature, and that the district court erred in failing to sustain the demurrer of the S.I.D. trustees and in denying the appellants' motion to abate or to continue these proceedings until prior pending litigation, *S.I.D. I*, had been finally determined.

The judgment of the district court is reversed, and this cause is remanded to that court for further proceedings not inconsistent with this opinion. In the interest of judicial economy and to prevent disorder and confusion, the district court for Douglas County is ordered to consolidate *S.I.D. I* with *S.I.D. II* for trial.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.