STATE OF NEBRASKA EX REL. SCOULAR PROPERTIES, INC., AND THE SCOULAR COMPANY, APPELLANT, V. FRANK BEMIS, DOUGLAS COUNTY ASSESSOR, APPELLEE.

496 N.W.2d 488

Filed March 5, 1993.   No. S-90-755.

Frederick S. Cassman and Aaron D. Weiner, of Abrahams, Kaslow & Cassman, for appellant.

James S. Jansen, Douglas County Attorney, Edwin T. Lowndes, and Ronald E. Bucher for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

Relator appeals the district court's denial of its petition for an alternative writ of mandamus. We affirm.

Neb. Const. art. VIII, § 12, provides in part:

> For the purpose of rehabilitating, acquiring, or redeveloping substandard and blighted property in a redevelopment project . . . any city or village of the state may . . . incur indebtedness, whether by bond, loans, notes, advance of money, or otherwise. . . such cities or villages may also pledge for and apply to the payment of the principal, interest, and any premium on such indebtedness all taxes levied by all taxing bodies, . . . on the assessed valuation of the property in the project area portion of a designated blighted and substandard area that is in excess of the assessed valuation of such property for the year prior to such rehabilitation, acquisition, or redevelopment.

To implement that section of the Constitution, the Legislature enacted the Community Development Law, Neb. Rev. Stat. §§ 18-2101 et seq. (Reissue 1991). That Act provides in substance that upon approval of a redevelopment plan, the developer's cost of reconstruction and redevelopment of the specific property may be financed by the issuance of bonds by the particular city involved. *Upon request*, the county assessor is to transmit a redevelopment valuation of the property equal to the assessed valuation for the year immediately preceding the effective date of the redevelopment plan. Following the redevelopment, the developer agrees to pay taxes on the basis of the assessed valuation of the property resulting from the

redevelopment, and the difference between the taxes which would have been paid on the pre-redevelopment valuation and the taxes paid on the post-redevelopment valuation, is paid into a special fund to be used to repay the principal and interest on the bonds so issued.

In December 1987, Scoular Properties, Inc. (Scoular), was interested in purchasing an unoccupied office building located at 2027 Dodge Street, Omaha. Scoular approached the planning department of the City of Omaha and inquired whether the city would be willing to provide tax increment financing in an amount that would make the purchase and redevelopment of the property feasible.

A representative of the city planning department, Gregory Peterson, printed out the information on the property which he accessed from the Douglas County computer terminal. The record does not disclose that at that time any specific request for this information was made of the county assessor. The assessed valuation of the property for the 1987 tax year in this computer printout appears to have been $0.00 for both the land and improvements. A copy of that computer printout, which appears in the record as Exhibit 4, is captioned "INQUIRY ONLY" followed by "EXEMPT 0." There then follows "CURRENT VALUE, Year, 1987, 01-18-1988, LAND 0, IMPR 0, TOTAL 0."

Based upon the city planning department's representation as to the feasibility of the redevelopment plan, Scoular proceeded with the purchase of the property sometime between December 1987 and February 1988. On June 28, 1988, the city council of the City of Omaha approved a redevelopment plan for renovation and rehabilitation of the property, the cost of which, according to relator's petition, was "to be augmented by Tax Increment Financing through the anticipated increased tax valuation of approximately $3,980,000 which would yield estimated annual property taxes of $101,438.00".

On August 1, 1988, Scoular entered into a redevelopment agreement with the City of Omaha with respect to the tax increment financing under the provisions of the Nebraska Community Development Law. The same day, Douglas County, along with the City of Omaha and Scoular, entered into

an inducement agreement with FirsTier Bank regarding the bank's purchase of $700,000 in City of Omaha Term Revenue Notes wherein the parties agreed to cause assessed valuation of the redeveloped property following·completion of the project to be not less than $784,000 on January 1, 1988, and not less than $3,980,000 on and after January 1, 1989. This increase in assessed valuation over what Scoular thought was a pre-development valuation of $0.00 would generate excess ad valorem taxes of $101,438 each year which could be applied against the payment of the revenue notes.

As the final step in obtaining the tax increment financing, the City of Omaha on January 31, 1989, for the first time, then requested that respondent, the Douglas County Assessor, transmit to the City and Douglas County Treasurer the "redevelopment project valuation". In response to this request, Chief Deputy County Assessor Robert L. Rice, by letter dated February 14, 1989, transmitted a redevelopment valuation of $1,360,000 (the 1988 assessed valuation) instead of the 1987 assessed valuation of $0.00 apparently shown on the assessor's records accessed by computer by the City of Omaha. This mandamus action was instituted to force respondent to transmit the assessed valuation for the property in the amount of $0.00, as required, relators contend, by Neb. Rev. Stat. § 18-2148 (Reissue 1991). That section provides in part that "the county assessor . . . shall transmit to an authority and the county treasurer, upon request of the authority, the redevlopment project valuation . . . ."

According to Frank Bemis, the Douglas County Assessor, the respondent herein, the Scoular property would reflect a $0.00 value because the property was assessed by the State of Nebraska by means of central assessment through the State Tax Commissioner pursuant to Neb. Rev. Stat. §S 77-801 et seq. (Reissue 1990) for the reason that the property had been owned by ENRON, a public service entity.

When ENRON sold the Dodge Street property to Scoular, a private corporation, Douglas County resumed responsibility for the property's assessment. Since the State does not carry assessments on individual parcels, but merely a lump sum on all the property a company owns in a particular county, Douglas

County had no way of knowing with any accuracy the assessable value of Scoular's 2027 Dodge Street property before 1989. When requested to transmit a "redevelopment project valuation", the county had an appraiser inspect the property whose recommendation was to place a valuation of $1,360,000 on the property. The county then adopted this January 1988 figure as the January 1987 figure for the base redevelopment valuation.

Mandamus is defined as an extraordinary remedy, not a writ of right, issued to compel performance of a purely ministerial act or duty, imposed by law on an inferior tribunal, corporation, board, or person, where (1) relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to do the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. Neb. Rev. Stat. § 25-2156 (Reissue 1989); *State ex rel. Pederson v. Howell*, 239 Neb. 51, 474 N.W.2d 22 (1991); *State ex rel. PROUD v. Conley*, 236 Neb. 122, 459 N.W.2d 222 (1990). Mandamus is a law action and conflicts in the evidence or findings of fact based thereon will not be disturbed on appeal unless clearly wrong. *State ex rel. Fraiser v. Whaley*, 194 Neb. 703, 234 N.W.2d 909 (1975).

The "clear duty" existing on the part of the respondent in this instance was to "transmit to an authority and the county treasurer, (City of Omaha and Douglas County Treasurer) upon request of the authority, (City of Omaha) the redevelopment project valuation . . . ." Neb. Rev. Stat. § 18-2148 (Reissue 1991). Once the request was made by "the authority" the respondent county assessor did just that. Although the relator was dissatisfied with the valuation furnished, it should have been quite apparent that the printout, Exhibit 4, upon which the relator originally relied, was not an official document of the county assessor's office. Further, that the "0" valuation resulted from the fact that the property was classified as "exempt" was also apparent and should have alerted the relator that it was not entitled to rely on that figure as the valuation of this property. The respondent did comply with his lawful duty "to do the act requested" by furnishing the "redevelopment

project valuation."

The relator having received from the respondent compliance with the legal duty for which the respondent was obligated, the district court was correct in refusing to grant relator's requested writ and *its judgment is affirmed.*

AFFIRMED.