ROBERT D. KINSEY, JR., SPECIAL ADMINISTRATOR OF THE ESTATE OF MAUDE A. DOLLIVER, DECEASED, APPELLANT, V. COLFER, LYONS, WOOD, MALCOM & GOODWIN, A PARTNERSHIP, ET AL., APPELLEES.

606 N.W. 2d 78

Filed February 18, 2000.   No. S-98-996.

Robert D. Kinsey, Jr., pro se, and Nicholas L. Ackerman, of Kinsey, Ridenour, Becker & Kistler, for appellant.

John Wightman and Jeffrey M. Wightman, of Cook, Wightman & Doyle, for appellees.

Stanley C. Goodwin, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

Robert D. Kinsey, Jr., petitioned for further review from the Nebraska Court of Appeals' summary dismissal of Kinsey's appeal for lack of jurisdiction. Kinsey also asks this court to review the trial court's order which granted the pleas in abatement of appellees Thomas F. Colfer, Joseph D. Wood (J. Wood), Philip P. Lyons, Paul M. Wood (P. Wood), and Stanley C. Goodwin, finding that there was a same or similar action pending between the parties.

## BACKGROUND

On February 17, 1993, Maude A. Dolliver (decedent), a domiciliary of Red Willow County, Nebraska, died testate. On February 25, decedent's will was admitted for informal probate in the Red Willow County Court and Daniel B. Funk was appointed personal representative of decedent's estate and was issued letters testamentary in decedent's estate. Thereafter, Funk retained Terrence D. Malcom to serve as the attorney for the estate. At the time Funk retained Malcom and until September 6, 1993, Malcom was a partner in a law firm with Colfer, J. Wood, Lyons, Goodwin, and P. Wood (hereinafter the partners). The partnership was known as Colfer, Lyons, Wood, Malcom & Goodwin (the partnership).

According to the terms of decedent's will, the following specific bequests were to be made: $50,000 to the Shriners Hospital for Children (Shriners Hospital) and $35,000 to the First Church of Christ Scientist, McCook, Nebraska (First Church). One-fourth of the residue of decedent's estate was devised to each of the following: (1) the American Cancer Society (Cancer Society), (2) the National Camps for Blind Children (National Camps), (3) the American Heart Association (Heart Fund), and (4) Funk.

On March 18, 1993, Funk paid $235,000 in estate funds to Malcom for distribution in full to the Shriners Hospital and the First Church, and partial distributions of $50,000 each to the Cancer Society, the National Camps, and the Heart Fund.

On May 17, 1993, Funk paid $127,500 in estate funds to Malcom for partial distribution in the amount of $42,500 each to the Cancer Society, the National Camps, and the Heart Fund.

On September 6, 1993, the partnership dissolved because Malcom withdrew from the law firm. When the partnership ended, Funk sent a request to the remaining partners that legal representation continue with Malcom and that all files and documents continue in Malcom's possession or be delivered to him.

On November 1, 1993, Funk paid $12,135.11 in estate funds to Malcolm for final distribution in the amount of $4,045.04 each to the Cancer Society and the Heart Fund, and $4,045.03 to the National Camps.

On December 18, 1996, Funk, as personal representative of decedent's estate, filed suit against Malcom in the Red Willow County District Court for the conversion of funds from the estate which were to be paid to the charities. On February 25, 1997, a default judgment was entered by the Red Willow County District Court against Malcom in the amount of $219,635.12, representing the loss sustained by decedent's estate as a result of Malcom's conversion of the estate's funds.

On January 7, 1997, Funk filed a personal representative's final accounting with the Red Willow County Court disclosing the transfers to the Heart Fund, the Cancer Society, the Shriners Hospital, and the National Camps.

On January 27, 1997, the Heart Fund filed an objection to the final accounting asserting it had received only $60,000 of the $96,545.04 allegedly transferred to it according to the final accounting. The Cancer Society filed a similar objection on the same date, asserting it also had received only $60,000 of the $96,545.04 allegedly transferred to it. On February 10 and 18, 1997, respectively, the Shriners Hospital and the National Camps filed objections, each asserting it had failed to receive any portion of the money allegedly transferred to it as reported in the final accounting.

On August 18, 1997, the Shriners Hospital filed a petition for appointment of a special administrator for decedent's estate. The Cancer Society; the National Camps; the Heart Fund; and Funk, in his capacity as a residuary devisee, consented to immediate entry of an order conforming to the Shriners Hospital's petition for appointment of a special administrator.

On September 30, 1997, the Red Willow County Court appointed Kinsey as special administrator of decedent's estate, finding such appointment was necessary to preserve the estate, to secure proper administration of the estate, and to recover wrongly converted assets belonging to the estate. Kinsey was issued letters of special administration that same day.

On December 3, 1997, Kinsey filed the present action in the Lancaster County District Court against the partnership and the individual partners, seeking to recover funds allegedly converted by Malcom on theories of breach of trust, negligence, and fraud and conversion committed by a partner.

On December 5, 1997, Kinsey filed a petition against Funk in the Red Willow County District Court alleging that Funk was negligent in overseeing the funds of decedent's estate based on theories of breach of fiduciary duty, vicarious liability, and negligence. The petition filed against Funk, as well as the petition filed against the partnership and the partners in Lancaster County, prayed that the respective partners be held liable for $219,635.12, the amount Malcom converted from decedent's estate.

On February 24, 1998, Funk responded to the action filed against him in Red Willow County by seeking leave to file a third-party complaint against the partnership and the individual partners. The Red Willow County District Court granted leave to file the third-party complaint on June 4, 1998. Funk's third-party complaint against the partnership and the individual partners alleged breach of trust, negligence, and fraud and conversion committed by a partner.

On March 30, 1998, Colfer and P. Wood responded as defendants to the present action by filing a plea in abatement. J. Wood and Lyons filed a separate plea in abatement that same day. On April 2, Goodwin also filed a plea in abatement. Each of the pleas in abatement were substantially similar to the others and prayed that the present action against the partnership and the individual partners be abated. The pleas in abatement prayed that the Lancaster County District Court enter judgment abating Kinsey's petition on various grounds, including (1) Kinsey's cause of action was barred because there was another action pending between the same parties involving the same or substantially the same subject matter (in Red Willow County), (2) Kinsey had no legal capacity to sue, and (3) Kinsey's action concerning the subject matter of this case was barred because a judgment concerning the same subject matter had been obtained (the default judgment against Malcom on February 25, 1997).

On July 17, 1998, the partners, as third-party defendants in the Red Willow County lawsuit, filed pleas in abatement substantially similar to those filed in the present action.

On August 14, 1998, the Lancaster County District Court granted each of the partners' pleas in abatement, thereby abating the present action, finding that the present case and the case

before the Red Willow County District Court involve the same subject matter, the same causes of action, and seek the same type of relief for decedent's estate. On August 21, Kinsey filed a motion to reconsider asking the Lancaster County District Court to reconsider its August 14 order on the basis that the court should not have abated the first lawsuit filed (the Lancaster County action) against the partners in favor of a subsequent proceeding (the Red Willow County action).

On August 31, 1998, Funk, acting as a third-party plaintiff in the Red Willow County action, moved to dismiss the third-party petition he had filed against the partnership and the partners. We cannot tell from the record whether Funk's motion was ever ruled upon by the Red Willow County District Court.

On September 10, 1998, Kinsey filed a notice of appeal in the present case. On September 18, the Lancaster County District Court concluded that Kinsey's motion to reconsider was moot, finding that "[t]his court no longer has jurisdiction due to said appeal."

On November 24, 1998, the Court of Appeals issued an order treating Kinsey's motion to reconsider as a motion for new trial and summarily dismissed the appeal based on lack of jurisdiction. Kinsey petitioned this court for further review, which we granted.

## ASSIGNMENTS OF ERROR

Kinsey assigns that the Court of Appeals erred in treating his motion to reconsider as a motion for new trial and in dismissing his appeal. Kinsey further assigns that the trial court erred in granting the partners' pleas in abatement and in abating Kinsey's petition in favor of a subsequent lawsuit.

## STANDARD OF REVIEW

■ It is not only within the power, but it is the duty, of an appellate court to determine whether it has jurisdiction over the matter before it. *Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999); *In re Conservatorship of Holle*, 254 Neb. 380, 576 N.W.2d 473 (1998).

■ As a general rule, where a judgment in a prior suit would be a bar to a judgment in the second suit brought in the same or

another court of concurrent jurisdiction, the plea in abatement should be sustained. *State ex rel. Pederson v. Howell*, 239 Neb. 51, 474 N.W.2d 22 (1991); *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989).

## ANALYSIS

### DISMISSAL OF APPEAL

We first address whether the Court of Appeals erred in dismissing Kinsey's appeal. On August 14, 1998, the trial court sustained the partners' pleas in abatement and abated the present action. On August 21, Kinsey filed a motion to reconsider, asking the trial court to reconsider its August 14 order. On September 10, Kinsey timely filed a notice of appeal. On September 18, the trial court concluded that because of Kinsey's appeal, it no longer had jurisdiction to consider the motion for reconsideration.

On appeal, the Court of Appeals determined that it lacked jurisdiction because it treated Kinsey's motion to reconsider as a motion for new trial which had not been decided; therefore, the cause remained in the district court "so long as the motion is undisposed of, and there can be no final judgment until its disposition." See *Jerabek v. Ritz*, 221 Neb. 448, 449, 377 N.W.2d 540, 540 (1985). Where the record shows the filing of a motion for new trial, but no final, appealable order by the trial court disposing of the motion, an attempted appeal in the action will be dismissed as prematurely taken. *Dvorak v. Bunge Corp.*, 256 Neb. 341, 590 N.W.2d 682 (1999).

The only notations regarding the trial court's decision on Kinsey's motion to reconsider are the trial judge's minutes for September 18, 1998, indicating that the motion to reconsider is moot and that the trial court no longer has jurisdiction due to Kinsey's notice of intention to appeal. The Court of Appeals elected to treat Kinsey's motion to reconsider as a motion for new trial, and because there was no rendition of the judgment regarding the motion to reconsider, the Court of Appeals concluded it was without jurisdiction to consider Kinsey's appeal.

This court previously addressed whether a motion to reconsider should have the same tolling effect on the time for

filing an appeal as a motion for new trial. In *Bechtold v. Gomez,* 254 Neb. 282, 288, 576 N.W.2d 185, 189-90 (1998), we stated that "[a] motion for reconsideration does not toll the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment." In *Breeden v. Nebraska Methodist Hosp.,* 257 Neb. 371, 376, 598 N.W.2d 441, 445 (1999), we stated:

> [F]rom October 1, 1999, forward, if the pleading does not state explicitly that a new trial is requested and does not set forth the statutory grounds for a new trial as provided in [Neb. Rev. Stat.] § 25-1142 [(Reissue 1995)], the pleading will not be treated as a motion for new trial and will not toll the time for filing an appeal.

In the present case, Kinsey's notice of appeal was filed within 30 days of the trial court's order as required by Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 1998), and therefore, the Court of Appeals erred in concluding that the appeal was premature.

We have made it clear that a motion to reconsider is not to be treated as a motion for new trial for purposes of tolling the time for filing an appeal. It would create confusion to hold that a motion to reconsider should be treated as a motion for new trial for other purposes. As we stated in *Bechtold v. Gomez, supra,* a motion to reconsider is nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. Therefore, a motion to reconsider is not to be treated as a motion for new trial for purposes of being ruled upon by the trial court before an appellate court has jurisdiction. Once a notice of appeal has been filed, any pending motions to reconsider that have not been ruled upon by the trial court become moot and the trial court no longer has jurisdiction.

The next issue is whether the granting of a plea in abatement is a final, appealable order.

> An action which has been abated by an earlier action generally continues until an order of dismissal is entered by the court . . . . The trial court usually has discretion as to whether to dismiss an action on the basis that there is another action pending between the same parties for the same cause . . . .

1 Am. Jur. 2d *Abatement, Survival, and Revival* § 50 at 106 (1994).

■ A plea in abatement does not go to the merits of an action, but, by presentation of facts extrinsic to the merits of an action, demonstrates irregularities or circumstances which preclude further prosecution of the action or require suspension of the proceedings. *State ex rel. Pederson v. Howell*, 239 Neb 51, 474 N.W.2d 22 (1991); *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

■ A trial court has discretion whether to dismiss a case after it grants a plea in abatement, thereby precluding further prosecution of the action, or to not dismiss the action and suspend the proceedings pending the outcome of the other case. Here, there is no indication in the record that the trial court dismissed the present action after it granted the plea in abatement, and therefore, the action is simply abated.

■ A plea in abatement is similar to a demurrer, and the granting of a plea in abatement without an order of dismissal is not a final, appealable order. The sustaining of a general demurrer, not followed by a judgment of dismissal terminating the litigation, does not constitute a final, appealable order. *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998); *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998). The Court of Appeals was correct in dismissing the appeal, but erred in treating the motion for reconsideration as a motion for new trial. The plea in abatement, without a dismissal, did not constitute a final, appealable order.

## CONCLUSION

The Court of Appeals erred in treating Kinsey's motion to reconsider as a motion for new trial. The Court of Appeals was correct in dismissing this appeal, but not for the reasons it stated. The granting of a plea in abatement without an order of dismissal does not constitute a final, appealable order. Therefore, we affirm the judgment of dismissal.

AFFIRMED.

McCORMACK, J., participating on briefs.