745 N.W.2d 616 (2008)
16 Neb. App. 504
COMMUNITY REDEVELOPMENT AUTHORITY OF the CITY OF HASTINGS, Nebraska, a municipal corporation, and City of Hastings, Nebraska, a municipal corporation, appellees and cross-appellants,
v.
Patricia GIZINSKI, Adams County Assessor, et al., appellants and cross-appellees.
No. A-06-075.
Court of Appeals of Nebraska.
March 4, 2008.
*619 Charles A. Hamilton, Deputy Adams County Attorney, for appellants.
Robert M. Sullivan, Hastings, for appellees.
IRWIN, SIEVERS, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Patricia Gizinski, the Adams County assessor; Julia Moeller, the Adams County treasurer; and Adams County, Nebraska (collectively the County), appeal from the declaratory judgment and writ of mandamus entered against them in favor of the Community Redevelopment Authority of the City of Hastings, Nebraska, and the City of Hastings (collectively the Authority) by the district court for Adams County. The district court entered a declaratory judgment, finding that the redevelopment project valuation for certain property should have been set at $32,500, and issued a writ of mandamus directing the county assessor to transmit that value as of January 1, 2000, to the Authority and the county treasurer in accordance with Nebraska's Community Development Law, Neb.Rev.Stat. § 18-2101 et seq. (Reissue 1997 & Cum.Supp.2004). The County appeals, and the Authority cross-appeals. For the reasons set forth herein, we affirm.

BACKGROUND

General Information.
We first set forth some general information in order to provide a context for the dispute in the present case. Neb. Const. art VIII, § 12, provides in part:
For the purpose of rehabilitating, acquiring, or redeveloping substandard and blighted property in a redevelopment project ... any city or village of the state may ... incur indebtedness, whether by bond, loans, notes, advance of money, or otherwise.... [S]uch cities or villages may also pledge for and apply to the payment of the principal, interest, and any premium on such indebtedness all taxes levied by all taxing bodies ... on the assessed valuation of the property in the project area portion of a designated blighted and substandard area that is in excess of the assessed valuation of such property for the year prior to such rehabilitation, acquisition, or redevelopment.
In State ex rel. Scoular Prop. v. Bemis, 242 Neb. 659, 660-61, 496 N.W.2d 488, 489 (1993), the Nebraska Supreme Court discussed the implementation of that section of the Constitution:
To implement that section of the Constitution, the Legislature enacted the Community Development Law, Neb. Rev.Stat. §§ 18-2101 et seq. (Reissue 1991). That Act provides in substance that upon approval of a redevelopment plan, the developer's cost of reconstruction and redevelopment of the specific property may be financed by the issuance of bonds by the particular city involved. Upon request, the county assessor is to transmit a redevelopment valuation of the property equal to the assessed valuation for the year immediately preceding the effective date of the redevelopment plan. Following the redevelopment, the developer agrees to pay taxes on the basis of the assessed valuation of the property resulting from the redevelopment, and the difference between the taxes which would have been paid on the pre-redevelopment valuation and the taxes paid on the postredevelopment valuation, is paid into a special fund to be used to repay the *620 principal and interest on the bonds so issued.
(Emphasis omitted.)
Specifically at issue in the present case is Neb.Rev.Stat. § 18-2148 (Reissue 1997), which defines the duties of the county assessor with respect to the valuation of redevelopment property:
Commencing on the effective date of the provision outlined in section 18-2147, the county assessor, or county clerk where he or she is ex officio county assessor, of the county in which the redevelopment project is located, shall transmit to an authority and the county treasurer, upon request of the authority, the redevelopment project valuation and shall annually certify to the authority and the county treasurer the current valuation for assessment of taxable real property in the redevelopment project. The county assessor shall undertake, upon request of an authority, an investigation, examination, and inspection of the taxable real property in the redevelopment project and shall reaffirm or revalue the current value for assessment of such property in accordance with the findings of such investigation, examination, and inspection.
"Redevelopment project valuation" is defined as "the valuation for assessment of the taxable real property in a redevelopment project last certified for the year prior to the effective date of the provision authorized in section 18-2147." § 18-2103(21).

Crosier Redevelopment Project.
On or about January 8, 2001, the Hastings City Council passed and approved a resolution which authorized the Authority to take the actions necessary to implement a redevelopment project known as the Crosier Redevelopment Project. The Crosier Redevelopment Project, is a project involving the use of tax increment financing pursuant to the Community Development Law and the redevelopment plan approved by the city council. The Authority entered an allocation agreement, providing for payment of debt by the Authority utilizing these funds. The redevelopment plan approved by the city council provided that the effective date of the project would be January 1, 2002, and that the redevelopment project valuation date would accordingly be January 1, 2001. On or about April 23, 2001, the city council passed a resolution, approving an amended redevelopment project plan, which amended plan changed the effective date of the project to January 1, 2001, and the redevelopment project valuation date to January 1, 2000. In May 2001, the Authority notified the county assessor's office concerning the Crosier Redevelopment Project and requested that the county assessor certify the redevelopment project valuation in accordance with § 18-2148. On May 3, 2002, the county assessor acknowledged that the taxable value for the property in question for 2000 was $0 because "`it was tax exempt property belonging to Crosier's, a nonprofit entity.'" On May 2, the county assessor issued a certificate as to the redevelopment project valuation for January 1, 2000, in the amount of $614,440. On June 1, 2002, the county assessor's office changed the redevelopment project valuation to $900,475.

Procedural History.
On October 15, 2003, the Authority filed a complaint for declaratory judgment and writ of mandamus. The Authority alleged, among other things, that without the correct certification of the redevelopment project valuation by the county assessor, the Authority would not be able to collect tax increment funds as allowed under the Community Development Law. The Authority alleged that despite demand upon *621 the county assessor that the redevelopment project valuation be properly set at $0, the county assessor had failed to make the proper certification as required by law. The Authority alleged that certification of the correct redevelopment project valuation was a purely ministerial action and that the refusal to make such certification was arbitrary, capricious, and contrary to the law. The Authority sought an order declaring what the redevelopment project valuation properly should be and a writ of mandamus compelling the county assessor to show cause why she had not properly certified the valuation on or before a date to be set by the court.
The Authority filed a motion for summary judgment on April 9, 2004, and the County filed a motion for partial summary judgment on May. 3. On May 14, an evidentiary hearing was held on the summary judgment motions, and on July 29, the district court entered an order making certain findings of fact and conclusions of law but overruling the motions for summary judgment. The court, relying on the Nebraska Supreme Court's ruling in State ex rel. Scoular Prop. v. Bemis, 242 Neb. 659, 496 N.W.2d 488 (1993), found that the property did have a value and that the county assessor accordingly complied with her lawful duty to set a value. The district court also ruled that "additional evidence [was] required to make a correct finding as to the property's value of either $614,440.00 or $900,47[5].00."
Trial was held before the district court on April 13, 2005. In addition to the facts set forth above, the testimony and evidence at trial showed that the property in question, known as the. Crosier Monastery, was purchased in January 2001 for $32,500, by an entity in which Thomas Lauvetz is the general partner. Evidence was presented to indicate that at the time of purchase, the property had no value on the real estate market. Other evidence was presented to indicate that the price of $32,500 for the real estate was an appropriate and fair price, based upon an arm's-length transaction. The main building on the property was built in 1889, with the addition of a chapel and two sleeping wings in 1961. At the time of trial, the chapel was being leased to the Catholic Diocese of Lincoln. Evidence was presented regarding the building's numerous drawbacks and defects, including evidence that the cost to bring the building into full code compliance was $2 million. Lauvetz testified that he made numerous improvements to the property, at a cost of $1.3 million, and, while the exact timing of these improvements is somewhat unclear from the record, the record reflects that these improvements would have been made after the January I, 2000, valuation date set forth in the amended redevelopment project plan.
The last valuation certified by the county assessor's office was based on an appraisal of $900,475 by Darrel Stanard, a licensed appraiser. Stanard testified that the $614,440 value was attributed solely to the church or chapel on the property and was derived using appraisal software and manuals, based on the square footage, building costs, and depreciation. Stanard testified that the $900,475 value included the land, church, and the rest of the building to which the church is connected. This appraisal was an attempt to determine the value of the property for 2001, and included at least some of the improvements made by Lauvetz.
On November 1, 2005, the district court entered a declaratory judgment setting the value of the property at $32,500 and issued a writ of mandamus, requiring the county assessor to transmit such value in accordance with Nebraska's Community Development Law. With respect to the valuation, *622 the district court noted that it did not have evidence before it at the time of its summary judgment order as to the true condition of the building and that based upon the trial evidence, the correct redevelopment project valuation as of January. 1, 2000, was $32,500. The court stated that $32,500 was "[t]he only value that actually makes sense and has any relation to true market value at the time." The court rejected the Authority's requested valuation of $0, relying on the Nebraska Supreme Court's analysis in State ex rel. Scoular Prop. v. Bemis, 242 Neb. 659, 496 N.W.2d 488 (1993), and concluded that the property could not have a value of $0 based solely on its previous exempt status. The district court also discussed and rejected the County's requested valuation of $900,475, based upon certain inadequacies in Stanard's appraisal identified by the court, stating that the County had requested a valuation that had "no relation to actual market value or logic."
The district court addressed the County's argument that it did not have subject matter jurisdiction and that the case should have been brought first to the Adams County Board of Equalization and subsequently appealed to the Tax Equalization and Review Commission (TERC). The court concluded that because there is. no appeal process included in the statutory scheme for Nebraska's Community Development Law, a mandamus action is an appropriate remedy. Finally, the district court noted the requirements of a writ of mandamus and found that the requirements had been met in this case.
The County filed a motion for new trial, which was overruled by the district court on December 14, 2005. Subsequently, the County perfected its appeal to this court, and the Authority perfected its cross-appeal.

ASSIGNMENTS OF ERROR
In its brief, the County did not separately assign error as required by Neb. Ct. R. of Prac. 9D(1)(e) (rev.2006), which requires a separate section for assignments of error, designated as such by a heading, and requires that the section be located in the sequence specified by rule 9D(1)after a statement of the case and before a list of controlling propositions of law. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. City of Gordon v. Montana Feeders, Corp., 273 Neb. 402, 730 N.W.2d 387 (2007). Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. Linch v. Northport Irr. Dist., 14 Neb.App. 842, 717 N.W.2d 522 (2006). In the interest of fairness, we have reviewed the record for plain error.
On cross-appeal, the Authority asserts that the district court erred when it failed to amend its final order to show that the county assessor was required to transmit a value of $5,735 upon receipt of exhibit 16 during the hearing on the motion for new trial.

ANALYSIS

Jurisdiction.
Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., 273 Neb. 133, 728 N.W.2d 560 (2007). When a lower court lacks the authority to exercise its subject matter jurisdiction to adjudicate the merits of a claim issue, or question, *623 an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. Id. Accordingly, before turning to our plain error analysis, we first examine the County's assertion that the district court did not have jurisdiction in this case.
The County argues that the matter of the redevelopment property valuation should have been brought first before the Adams County Board of Equalization and then appealed to the TERC. Neb.Rev. Stat. § 77-1501 (Cum.Supp.2006) currently provides, in part, that "[t]he county board of equalization shall fairly and impartially equalize the values of all items of real property in the county so that all real property is assessed uniformly and proportionately." Among other things, Neb.Rev. Stat. § 77-5007 (Supp.2007) currently provides:
The [TERC] has the power and duty to hear and determine appeals of:
(1) Decisions of any county board of equalization equalizing the value of individual tracts, lots, or parcels of real property so that all real property is assessed uniformly and proportionately;
. . . .
(10) Any other decision of any county board of equalization.
The County notes that the Nebraska Supreme Court has stated that a property owner's exclusive remedy for relief from overvaluation of property for tax purposes is by protest to the county board of equalization. Bartlett v. Dawes Cty. Bd. of Equal., 259 Neb. 954, 613 N.W.2d 810 (2000). However, in the present case, the valuation was not for tax purposes, but, rather, for purposes of obtaining tax increment financing under the Community Development Law. Furthermore, the Authority is not the property owner.
The present case is similar to State ex rel. Scoular Prop. v. Bemis, 242 Neb. 659, 496 N.W.2d 488 (1993). In that case, a private corporation purchased certain real property, which had a previous assessed valuation of $0 and was classified as exempt because it had been owned by a public service entity. The corporation entered into a redevelopment agreement with the City of Omaha, Nebraska, and as the final step in obtaining tax increment financing, the city requested that the county assessor transmit to the city and to the county treasurer the redevelopment project valuation. Upon receiving the request, the county in that case had an appraiser inspect the property who recommended a valuation of $1,360,000, which value was adopted by the county as the figure for the previous year for the base redevelopment valuation. A mandamus action was then initiated to force the county to transmit a $0 valuation, which the relator contended was required by § 18-2148. On appeal, the Nebraska Supreme Court found, among other things, that the previous $0 valuation resulted from the fact that the property had been exempt and should have alerted the relator that it was not entitled to rely on that valuation. The court determined that the county assessor had complied with the duty to furnish the redevelopment project valuation and that the trial court had thus been correct in refusing to grant the requested writ of mandamus.
The State ex rel. Scoular Prop, case was decided before the creation of the TERC, but we see nothing in the statutes relating to the TERC or in the Community Development Law itself to indicate that a mandamus action is no longer an appropriate remedy for an authority that believes that a county assessor has not complied with his or her duty under § 18-2148 to transmit a redevelopment project valuation. There is no provision in the Community *624 Development Law requiring a hearing before a board of equalization and then an appeal to the TERC when a county assessor has allegedly failed in this duty. We find no error in the district court's conclusion that a mandamus action was an appropriate remedy in this case.

Plain Error Analysis.
Although the County did not specifically assign errors in its appeal to this court, we have reviewed the record for plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. Linch v. Northport Irr. Dist., 14 Neb.App. 842, 717 N.W.2d 522 (2006).
We find no plain error in the district court's determination that a writ of mandamus was appropriate or in the court's declaration of the value to be transmitted. Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued" to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. State ex rel. Upper Republican NRD v. District Judges, 273 Neb. 148, 728 N.W.2d 275 (2007). See, generally, State ex rel. Scoular Prop. v. Bemis, 242 Neb. 659, 496 N.W.2d 488 (1993) (finding that "clear duty" existed under § 18-2148 on part of county assessor to transmit upon request redevelopment project valuation). The district court did not commit plain error in finding that the assessor failed to comply with the legal duty to transmit a value for the property as of January 1, 2000, the project valuation date.
The district court did not commit plain error in the issuance of a writ of mandamus, directing the county assessor to comply with her statutory duty and to transmit a value of $32,500 in accordance with Nebraska's Community Development Law. The property at issue in this case is very unique, and based upon the facts of this case and our review for plain error, we find no error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
We have also reviewed for plain error the district court's consideration of valuation evidence beyond the two valuations noted in its summary judgment order of either $614,440 or $900,475, and we find no error in the receipt of such valuation evidence.

Authority's Cross-Appeal.
On cross-appeal, the Authority asserts that the district court erred when it failed to amend its final order to show that the county assessor was required to transmit a value of $5,735 upon receipt of exhibit 16, an affidavit of Lauvetz, during the hearing on the motion for new trial. There is nothing in the record to show that the Authority actually sought such a decision from the district court. The motion for new trial was filed by the County. At the hearing on the County's motion, counsel for the Authority offered exhibit 16, indicated that the Authority was satisfied with the decision of the district court, and argued:
I did submit an affidavit of ... Lauvetz to indicate that we've subsequently learned for the tax year 2000, which was the initial tax year in question here, that the county had placed a value on the *625 property, $5,735. . . . Lauvetz had recently sold the property and had to pay taxes based on that amount for the year. 2000 in order to clear title for passage of the property to the new owner. And so if the Court does order a new trial, we intend to show this further, in additional evidence which we believe supports the Court's original decision even further.
An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. Pohlmann v. Nebraska Dept. of Health & Human Servs., 271 Neb. 272, 710 N.W.2d 639 (2006). Because the issue of whether the assessor should have transmitted a redevelopment project valuation of $5,735 was not presented to the district court for decision, it is not appropriate for this court to resolve that issue on appeal. The Authority's cross-appeal is without merit.

CONCLUSION
We find no plain error in the district court's declaratory judgment and writ of mandamus entered in favor of the Authority. We make no determination with regard to the Authority's cross-appeal, because the issue raised was not presented to the district court for determination.
AFFIRMED.