STATE OF NEBRASKA EX REL. GREGORY A. MERCURIO,
JR., APPELLEE, V. BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA, APPELLANT.
329 N.W.2d 87

Filed January 7, 1983. No. 44511.

Richard R. Wood, General Counsel for the University of Nebraska, and John C. Wiltse, and David L. Buelt of Ellick, Spire & Jones, for appellant.

Paul LaPuzza, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

McCOWN, J.
This is an action by a student for a writ of mandamus requiring the respondent Board of Regents to remove a failing grade from the transcript of his grade record at the University of Nebraska. The District Court found that the respondent had a

duty to produce for the relator his educational records and had not done so, and issued a peremptory writ of mandamus ordering respondent to remove from the student transcript of the relator the transcribed grade of "F" in the biochemistry course involved. This appeal followed.

In the summer of 1978 Gregory A. Mercurio, Jr., a graduate student, enrolled in a biochemistry course which was conducted as a part of the graduate studies program at the University of Nebraska Medical Center in Omaha. The class consisted of 177 students and was taught by several faculty members. Dr. Ruegamer, chairman of the biochemistry department and chief lecturer in the course, served as overall faculty coordinator. Grades for the course were based upon three multiple-choice examinations. For the three regularly scheduled examinations students recorded their answers to the multiple-choice questions by blackening circles on computer answer sheets. The answer sheets were identified by each student's name and social security number, which he or she wrote on the answer sheet. The answer sheets were then computer graded. The result was a computer printout showing the percentage score each student had received.

Students unable to take a regularly scheduled examination were allowed to take a makeup examination. Approximately six to eight students normally took the makeup examination. A student taking the makeup examination recorded answers directly on the examination booklet, which was then hand graded by a faculty member immediately after the examination had concluded.

Each student's score on each examination for the regularly scheduled or makeup examination was then recorded on his or her separate grade record sheet maintained by the biochemistry department. The score recorded was taken directly from the computer-graded or hand-graded examination booklet. Following the examination, although the re-

sults were not distributed, students could find out their scores by asking the secretary for the biochemistry department.

Mercurio was unable to take the first regularly scheduled examination and, instead, took the makeup examination on August 4, 1978. This examination was hand graded and a score of "F-42" was entered on Mercurio's grade record sheet. Mercurio took the two last regularly scheduled examinations on August 26 and September 6, 1978, respectively. Grades of "56-F" for the August 26 examination and "69.3-C" for the September 6 examination were recorded on Mercurio's grade sheet. Mercurio's average for all three examinations was 56 percent. The biochemistry department grading committee established a grade of 60 percent as the dividing line between a "D" and an "F." That cutoff point was determined without knowledge as to how any particular student had performed in the course. Mercurio received the only failing grade in the class.

On September 15, 1978, Mercurio, having learned of his failing grade, met briefly with Dr. Ruegamer. Mercurio advised Ruegamer that he felt he had made a transposition error in filling in his answers on the answer sheet for the second examination. Dr. Ruegamer agreed to review the matter and meet with Mercurio again.

At the second meeting, Ruegamer reviewed Mercurio's answer sheet for examination No. 2 with him and told Mercurio that he and other members of the department had undertaken an elaborate review of the examination booklet and the materials supplied by Mercurio, and that both Dr. Ruegamer and another faculty member had inspected and hand graded Mercurio's answer sheet and both reached the same 56 percent result as the computer grade. Dr. Ruegamer also explained that the department could not make any grade adjustments based upon a

transposition error after examinations had been handed in and graded.

Mercurio then sought to commence a grade appeals procedure within the university to review his grade in the biochemistry course. He was informed that a new procedure for grade appeals was being written but was not yet completed. The new procedure went into effect in May 1979 and Mercurio filed his appeal. When the appeal was filed, Dr. Ruegamer discovered that Mercurio's answer sheet for examination No. 2 was missing and had apparently been lost at some time after the second meeting between Dr. Ruegamer and Mercurio. That answer sheet has never been found. A hearing was scheduled before the grade appeals committee for September 18, 1979. A dispute arose between Mercurio and the grade appeals committee about the proper procedures to be used at the hearing.

On September 17, 1979, Mercurio filed a petition in the District Court for an alternative writ of mandamus requiring that the respondent Board of Regents conduct the grade appeals hearing in accordance with statutory provisions for administrative agency hearings and that the formal rules of evidence applicable to district court proceedings be followed. At the suggestion of the trial court the parties reached a compromise as to the procedural difficulties and Mercurio's grade appeals hearing was held by the committee in March 1980. The District Court retained jurisdiction to insure that the hearing would comply with the requirements of due process.

In preparing for the grade appeals hearing the parties discovered that all of the makeup examination booklets for the first examination were also missing. Mercurio's answer sheet for the last regular examination was available and was furnished to Mercurio, together with the other educational records except for the two examination booklets. The grade appeals committee heard the appeal despite

the absence of Mercurio's two answer sheets and concluded that Mercurio's failing grade should remain on the transcript. Mercurio appealed to the vice president for academic affairs, who affirmed the decision of the grade appeals committee.

On October 31, 1980, Mercurio filed an amended petition in the District Court seeking an alternative writ of mandamus requiring that the respondent remove the "F" from his student transcript. Mercurio alleged that he was entitled to inspect his educational record and that respondent was obligated to produce all materials used in determining Mercurio's final grade, and that respondent failed to produce his answer sheets for examination Nos. 1 and 2 and that the absence of those records prohibited him from successfully appealing his grade or challenging the educational records, thus depriving him of due process of law.

Show cause hearings were held before the District Court on November 20, 1980, and again on February 25, 1981. The court received into evidence Mercurio's grade sheet containing his scores for all three examinations; a computer printout listing all of the students' scores for examination No. 2, including Mercurio's 56 percent score; the audio tape from the grade appeals hearing; and copies of the grade appeals procedure adopted by the university. Various witnesses testified to the facts outlined above and a faculty member testified as to his knowledge that Mercurio had received a 42 percent grade for makeup examination No. 1.

Mercurio testified that he had called the departmental secretary shortly after taking the makeup examination No. 1 and was informed of his grade, but that he did not contact the department to find out his grade after examination No. 2. He also testified that he went to the departmental office after examination No. 3 and received his score on that test. The departmental secretary also testified that she recorded Mercurio's scores on all three examina-

tions directly from his answer sheets to his grade sheet.

The trial court held that under the federal educational rights and privacy act, 20 U.S.C. 1232(g) (1976), and regulations thereunder (45 C.F.R. § 99 (1981)), and paragraph 5.3 of the bylaws of the Board of Regents and the grade appeals procedure adopted thereunder, the board had a duty to produce Mercurio's educational records for his review and use at the hearings. The court also determined that the federal regulations prohibit destruction of such educational records where there is outstanding a request for review, and that the board had a duty to produce the documents pertaining to examination Nos. 1 and 2.

The court concluded that there was no satisfactory explanation by the board as to why the documents could not be produced and entered a peremptory writ of mandamus requiring the board to remove from the student transcript of Mercurio the transcribed grade of "F" in the course entitled Biochemistry 510/810. The trial court refused supersedeas as untimely. The grade was expunged in compliance with the writ and this appeal followed.

On appeal Mercurio contends, as the trial court found, that because the board could not produce two of Mercurio's three examination papers, the board must expunge from the record his failing grade in a biochemistry course. The argument is that because the university had a duty to grant Mercurio the right to inspect and review his educational records and also was obligated not to destroy records when there was an outstanding request to inspect and review them, therefore the failure of the university to produce the two specific records entitled Mercurio to have his grade expunged. We disagree.

The federal educational rights and privacy act and regulations thereunder, together with the bylaws of the University of Nebraska and the grade appeals procedure of the University of Nebraska Medical

Center, grant to a student the right to inspect and review his educational records, and prohibit the destruction of records when there is an outstanding request to inspect and review them. They also provide for a hearing in cases where a student wishes to challenge the accuracy of his educational records.

The basic problem with Mercurio's contention is that it treats the original document as the only admissible evidence of the contents of the document. The argument also assumes, in spite of the evidence, that the absence of the document was the result of bad faith, malice, or fraud on the part of the university. There is no evidence of bad faith, malice, or fraud on the part of the university, the faculty, or the board in this record.

The only real issue in this case is whether Mercurio's grades on the two missing examination papers and his consequent failing grade for the course were accurate or inaccurate. Neb. Rev. Stat. § 27-1004 (Reissue 1979) provides in relevant part: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

"(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . ."

Secondary evidence of the contents of a writing is generally admissible where it is shown that the original writing has been lost or destroyed. This state has followed the general rule. In *In re Estate of Baker,* 144 Neb. 797, 806, 14 N.W.2d 585, 590-91 (1944), this court said: "Of course, the rule is that secondary evidence of the contents of a letter or telegram, the original of which would have been competent evidence, cannot be given unless some legal excuse is shown for failing to produce the original. If it is shown by satisfactory proof that the originals have been lost or destroyed one of the principal objections to secondary evidence at once disappears and such evidence becomes admissible. Their loss

or destruction need not be proved beyond the possibility of mistake as the court is vested with a judicial discretion in the matter and it is enough if the testimony satisfies the court of the fact with reasonable certainty. If they are accidentally destroyed by a party without fault secondary evidence may be given of their contents, and even if their destruction is voluntary secondary evidence of their contents may be given if the circumstances accompanying the act are free from suspicion of intent to defraud and consistent with an honest purpose.''

In the case at bar the testimony of various faculty and administrative personnel was uncontradicted that . they had examined the missing documents, hand graded them, and that that grade was directly transferred to the grade record sheet of Mercurio. There is simply no evidence of bad faith, malice, or fraud. If we accepted Mercurio's argument, any student who received a failing grade in any course who discovered one of his examination papers was missing from the university records could have his grade expunged because the record had been lost, misplaced, or destroyed. The secondary evidence as to the missing documents in the present case was given by witnesses under oath and subject to the rigors of cross-examination, and it was more than sufficient to establish the accuracy and validity of the grading of the missing documents.

In the absence of some evidence of arbitrary behavior or bad faith, courts will not substitute their judgment for the necessarily discretionary judgment of a school or university as to a student's educational performance. See, *Depperman v. University of Kentucky,* 371 F. Supp. 73 (E.D. Ky. 1974); *Greenhill v. Bailey,* 378 F. Supp. 632 (S.D. Iowa 1974), *reversed on other grounds* 519 F.2d 5 (8th Cir. 1975); *Connelly v. University of Vermont and State Agr. Col.,* 244 F. Supp. 156 (D. Vt. 1965).

Before a writ of mandamus may issue, the relator must show clearly and conclusively that he is enti-

tled to the particular relief requested; that the respondents are legally obligated to act; and the duty to act must be imposed by law and must be clear. *Singleton v. Kimball County Board of Commissioners,* 203 Neb. 429, 279 N.W.2d 112 (1979); *State ex rel. Newbold v. County of Buffalo,* 202 Neb. 813, 277 N.W.2d 246 (1979).

In the present case the relator has failed to show that he is clearly and conclusively entitled to the particular relief requested and granted and that the respondent board was legally obligated to act. Although we do not determine whether Mercurio had an adequate remedy at law, mandamus was not appropriately granted on the evidence in this case. The writ of mandamus is vacated. The judgment is reversed and the cause of action dismissed.

WRIT OF MANDAMUS VACATED.

REVERSED AND DISMISSED.

CAPORALE, J., not participating.