STATE OF NEBRASKA EX REL. THE CITY OF ELKHORN, NEBRASKA, APPELLANT, V. JULIE M. HANEY, DOUGLAS COUNTY TREASURER, APPELLEE.

566 N.W.2d 771

Filed July 3, 1997.   No. S-95-1112.

Malcolm D. Young and Jeff C. Miller, of Young & White, for appellant.

James S. Jansen, Douglas County Attorney, and John E. Huber for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

This is an action by the City of Elkhorn, Nebraska, for a writ of mandamus compelling Julie M. Haney, the duly elected treasurer of Douglas County, Nebraska (Treasurer), to comply with Elkhorn's demand for weekly remittance of taxes and assessments levied by Elkhorn and collected by the Treasurer. The district court for Douglas County denied Elkhorn's request for

a writ of mandamus, and Elkhorn appealed. Because we find that the Treasurer has not complied with a clear legal duty imposed by Neb. Rev. Stat. § 77-1759 (Reissue 1996), we reverse, and remand to the district court with instructions to issue a peremptory writ of mandamus.

## FACTS

Elkhorn is a city of the second class, located in Douglas County. As part of her official duties, the Treasurer collects taxes and assessments levied by Elkhorn and other taxing authorities in Douglas County. These collections are maintained in separate accounts, with all receipts entered in a "cash book."

On or about February 20, 1995, the mayor of Elkhorn sent a letter to the Treasurer, in which he stated:

> Pursuant to Neb. Rev. Stat. [§ 77-1759], please report and pay over all taxes and assessments due to the City of Elkhorn collected by you on the Monday of each week.

> In the event the amount collected and held by you does not equal One Thousand Dollars ($1,000.00) on a Monday, this request and demand may be postponed until the next Monday or until the amount equals One Thousand Dollars ($1,000.00).

Section 77-1759 provides: "The county treasurer shall report and pay over the amount of tax and special assessments due to towns, districts, cities, villages, corporations and persons, collected by him, when demanded by the proper authorities or persons."

On February 24, 1995, the Treasurer sent a letter to Elkhorn refusing its demand. In her letter, the Treasurer stated that § 77-1759 "must be read in a broader context beginning with 77-1751 et. seq. which pertains to the collection of 'state property taxes' which, as you know, no longer exists [sic] and, therefore does not apply to the distribution of local property taxes." The Treasurer further stated that the "distribution of local property taxes and my duties to distribute the same are found in 23-1601(4) of the Nebraska Revised Statutes." Neb. Rev. Stat. § 23-1601(4) (Reissue 1991) provides in pertinent part: "On or before the fifteenth day of each month, the county treasurer (a) shall pay to each city or village located within such county the amount of all funds collected or received for such city or village the previous calendar month . . . ." The Treasurer concluded that

she had fully complied with this statutory requirement and would do so in the future.

Elkhorn commenced this action in the district court for Douglas County on April 14, 1995. In the operative amended petition filed June 20, Elkhorn alleged its demand for weekly payment of tax collections and the Treasurer's refusal to comply with that demand. Elkhorn prayed for a peremptory writ of mandamus requiring the Treasurer to comply with Elkhorn's demand pursuant to § 77-1759. In her answer, the Treasurer asserted the same defenses set forth in her February 24 letter, summarized above.

On July 27, 1995, Elkhorn filed a motion with accompanying affidavit requesting that the district court issue a peremptory writ of mandamus compelling the Treasurer to pay to Elkhorn the funds collected by the Treasurer on behalf of Elkhorn. A hearing was held on July 31, during which the district court received in evidence the legislative history of 1978 Neb. Laws, L.B. 847, pursuant to the Treasurer's offer. On August 8, Elkhorn filed a second motion, requesting that the district court issue a peremptory writ or an alternative writ with an order to the Treasurer to show cause as to why the writ should not be issued. At a second hearing on August 9, the parties stipulated to the material facts which are summarized above.

On September 21, 1995, the district court issued an order denying Elkhorn's request for a peremptory writ of mandamus or for an alternative writ of mandamus. In its analysis, the district court agreed with the Treasurer's contention that her duty to remit taxes and assessments to cities of the second class was determined solely by § 23-1601(4), which required such payments on a monthly basis, and that she had no duty to make more frequent payments "on demand." The district court, therefore, denied the requested writ of mandamus.

Elkhorn perfected a timely appeal to the Nebraska Court of Appeals. Pursuant to our authority to regulate the dockets of the Court of Appeals and this court, we transferred the appeal to our docket.

## ASSIGNMENTS OF ERROR

Elkhorn contends that the district court erred in (1) denying the issuance of a writ of mandamus compelling the Treasurer to

pay over the amount of taxes and special assessments due Elkhorn in compliance with its demand and (2) dismissing the amended petition for writ of mandamus.

## SCOPE OF REVIEW

In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997); *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995); *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Moore v. Eggers Consulting Co., ante* p. 396, 562 N.W.2d 534 (1997); *Loup City Pub. Sch. v. Nebraska Dept. of Rev., ante* p. 387, 562 N.W.2d 551 (1997); *Metropolitan Utilities Dist. v. Balka, ante* p. 172, 560 N.W.2d 795 (1997).

## ANALYSIS

To warrant the issuance of a peremptory writ of mandamus to compel the performance of a duty by a public official, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty must be clear. Mandamus lies only to enforce performance of a mandatory ministerial act or duty and is not available to control judicial discretion. *Kortum, supra*; *Mullen, supra*; *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994).

The only issue before us is whether the Treasurer has a clear legal duty under § 77-1759 to remit tax collections to Elkhorn pursuant to its demand. Resolution of this issue requires application of well-established standards of statutory construction. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re*

*Estate of Muchemore, ante* p. 119, 560 N.W.2d 477 (1997); *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997); *Memorial Hosp. of Dodge Cty. v. Porter*, 251 Neb. 327, 557 N.W.2d 21 (1996). Inquiry into the legislative history requires that legislation be open for construction. A statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992). We find the language of § 77-1759 to be plain, direct, and unambiguous and therefore determine that it is not open for construction.

The Treasurer contends that § 77-1759 applies to the distribution of state property taxes and that because state property taxes are no longer collected in the State of Nebraska, § 77-1759 does not apply. We disagree. It is true that Neb. Rev. Stat. §§ 77-1751 through 77-1758 (Reissue 1990) dealt with the collection of state property taxes by county treasurers and the remittance of those taxes to the state treasury, and it is also true that these statutes were repealed by 1995 Neb. Laws, L.B. 490, § 195, operative January 1, 1996. However, there are two fatal flaws in the Treasurer's argument regarding the effect of this repeal. First, the plain language of § 77-1759 makes no reference to state property taxes, but deals instead with an entirely different subject matter: "tax[es] and special assessments due to towns, districts, cities, villages, corporations and persons" which are collected by the county treasurer. Second, § 77-1759 was *not* repealed. Thus, the repeal of §§ 77-1751 through 77-1758 has no relevance to the issue presented in this case.

The Treasurer insists that she is not governed by § 77-1759, but by § 23-1601(4). Therefore, her principal contention, adopted by the district court, is that she fully satisfied her legal duty under § 23-1601(4) by remitting taxes to Elkhorn on a *monthly* basis, as provided in § 23-1601(4). The Treasurer argues that when § 23-1601(4) was enacted in its current form in 1978, the Legislature also repealed Neb. Rev. Stat. § 17-705 (Reissue 1977), which provided:

> The treasurer of the county shall pay over on demand to the treasurer of any city of the second class or village all

money received by him arising from taxes levied belonging to such city or village, together with all money collected as a tax on dogs from residents of such corporation, for the use of the general fund therein. It shall be the duty of the county treasurer in making such remittance to specify what part thereof is derived from allocation of gas tax and what part from other sources.

The Treasurer contends that the repeal of § 17-705 and the implementation of § 23-1601(4) reflect an intent that county treasurers be required to remit taxes collected for cities of the second class on a monthly basis instead of "on demand." Further, the Treasurer argues that the repeal of § 17-705 removed the authority of a city of the second class to demand more frequent payments pursuant to § 77-1759. In contrast, Elkhorn argues that the repeal of § 17-705 eliminated a redundancy with § 77-1759 and that § 23-1601(4) merely establishes the *minimum* frequency with which treasurers must remit tax collections to cities of the second class if no demand for more frequent remittance is made pursuant to § 77-1759. We agree that the repeal of § 17-705 did not remove the authority of a city of the second class to demand payment under § 77-1759. The plain language of § 77-1759 provides that the county treasurer shall pay over the amount of tax collected when demanded by the proper authorities or persons. Clearly, the mayor of Elkhorn, who made the demand on the Treasurer in this case, was the proper authority to make said demand.

It is unnecessary for us to attempt to determine *why* the Legislature did not repeal § 77-1759 when it enacted § 23-1601(4); it is sufficient to note that it did not. The question then becomes, are §§ 77-1759 and 23-1601(4) in diametric conflict with each other, so that the application of one statute nullifies the other? In the absence of clear legislative intent, a construction of a statute will not be adopted which has the effect of nullifying or repealing another statute. See *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). We conclude that §§ 23-1601(4) and 77-1759 can be read so as to give effect to the plain language of each. Section 23-1601(4) requires county treasurers to remit tax collections to cities of the second class once a month regardless of whether the cities

have demanded remittance. Section 77-1759 gives a city the option of demanding remittance more frequently than once a month if it wishes to do so.

The Treasurer's contention that her duty to remit tax collections to cities of the second class is derived exclusively from § 23-1601(4) would essentially require us to disregard § 77-1759. This we cannot do. It is not within the province of a court to read a meaning into a statute that is not there, or to read anything direct and plain out of a statute. *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996); *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995); *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995). Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme and so that effect is given to every provision. See, *In re Interest of Powers*, 242 Neb. 19, 493 N.W.2d 166 (1992); *Bass v. County of Saline*, 171 Neb. 538, 106 N.W.2d 860 (1960). Giving effect to every provision in the relevant statutes, we find that the plain language of § 77-1759 authorizes a taxing authority to make demand for payment of its tax revenues which have been collected by the county treasurer.

In *State v. Roderick*, 23 Neb. 505, 37 N.W. 77 (1888), this court held that under statutory language similar to § 77-1759, a county treasurer had a legal duty to remit taxes due a city on demand and that compliance with this duty could be enforced by a writ of mandamus. There is no basis on the record before us to depart from this precedent. In the absence of ambiguity, courts must give effect to statutes as they are written. If the Treasurer feels aggrieved by this outcome, her remedy is in the Legislature. See *Bemis v. Board of Equalization of Douglas County*, 197 Neb. 175, 247 N.W.2d 447 (1976).

We, therefore, reverse the judgment of the district court for Douglas County and remand the cause with directions to issue a peremptory writ of mandamus requiring the Treasurer to pay tax collections which she holds for Elkhorn on a weekly basis, in compliance with Elkhorn's demand made on February 20, 1995, pursuant to the Treasurer's legal duty under § 77-1759.

REVERSED AND REMANDED WITH DIRECTIONS.