STATE OF NEBRASKA EX REL. EDWARD A. FICK AND KATHLEEN F. FICK, APPELLEES AND CROSS-APPELLANTS, V. SUSAN MILLER ET AL., APPELLANTS AND CROSS-APPELLEES.

584 N.W.2d 809

Filed October 9, 1998.   No. S-97-599.

388

John F. Recknor, of Recknor & Associates, for appellants.

Max G. Dreier, of Dreier Law Office, for appellees.

Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Connolly, J.

The relator appellees and cross-appellants, Edward A. Fick and Kathleen F. Fick, petitioned the Holt County District Court to issue an alternative writ of mandamus against the defendant appellants and cross-appellees, the superintendent and school board members of Holt County School District No. 137, commonly known as the Chambers School District. The Ficks sought to compel the appellants to pay their expenses incurred transporting their son to Chambers High School, and in the future, to either pay for all their transportation expenses to and from the high school or provide free transportation between the high school and their residence. The district court (1) dismissed the petition as to transportation claims filed with and denied by the appellants, (2) issued a writ of mandamus to compel the payment of transportation claims filed with the appellants but not yet acted upon, and (3) issued a writ of mandamus to compel the appellants in the future to provide either free transportation or reimbursement of the Ficks' transportation expenses at a statutory rate. Because we conclude that a ministerial legal duty was created by the affiliation petition, we affirm in part on other grounds and reverse in part with directions.

## I. BACKGROUND

The Ficks reside in Holt County School District No. 30, commonly known as the Inman School District. The Inman School

District is a Class I school district, and the Chambers School District is a Class II school district. See Neb. Rev. Stat. § 79-102 (Reissue 1996).

In September 1992, pursuant to statutory authority and mandate, the Inman School Board petitioned to affiliate with several larger, neighboring school districts. See Neb. Rev. Stat. § 79-402 et seq. (Reissue 1987 & Cum. Supp. 1992) (current version at Neb. Rev. Stat. § 79-413 et seq. (Reissue 1996 & Supp. 1997)). The petition to affiliate proposed that a portion of the Inman School District become affiliated with the Chambers School District. That portion included the Fick residence. As required, the petition outlined the terms that would govern the affiliation. See § 79-402.16 (Cum. Supp. 1992). One of the petition's terms stated:

> 9. Transportation to and from school within each affiliated high school or affiliated system referred to in this petition shall be made available by such district to students in grades 9 through 12 residing within Holt County School District No. 30 [Inman School District]. Transportation shall be provided on the same basis to such Holt County School District No. 30 [Inman School District] as it is provided to residents of the applicable affiliated high school district 9-12 students or affiliated school system [Chambers School District]. In the event any affiliated high school or affiliated system referred to in this petition elects not to provide transportation as herein provided such affiliated high school or affiliated system shall pay mileage to such grades 9 through 12 as provided by 79-490 R.R.S. [current version at Neb. Rev. Stat. § 79-611 (Supp. 1997)].

The appellants and their predecessors accepted the petition in November 1992, and the affiliation became effective July 1, 1993. See §§ 79-402.03(2) and 79-402.14 (Cum. Supp. 1992).

In August 1994, the third of the Ficks' six children, Preston Fick, began attending Chambers High School as a ninth grader. The Fick residence is 31 miles from Chambers High School. The Chambers School District provides bus transportation to and from school for high school students residing within its borders. The bus routes provide for stops "at or near" the students'

homes. At no time before December 8, 1994, did the Chambers School District provide or offer to provide any type of transportation for Preston Fick.

The Ficks demanded from Chambers Public Schools superintendent Susan Miller that the Chambers School District reimburse them for mileage accrued when providing Preston transportation to and from school. The appellants denied the Ficks' reimbursement demand at the appellants' October 4, 1994, meeting. The Ficks then began filing monthly transportation expense reimbursement claims with the appellants. Prior to the appellants' December 8 meeting, the Ficks had filed reimbursement claims covering their transportation expenses from August 19 through November 30. Although not expressly denying the Ficks' claims, on December 8 the appellants granted the Ficks a reimbursement allowance for only 4 school days—the 4 days between the end of the school's football season and the beginning of the basketball season. Preston participated in both activities. At the same meeting, the appellants also voted to provide future reimbursement only for transportation between the Fick home and a bus pickup/dropoff location at the edge of the Chambers School District—18½ miles away from the Fick home.

In a letter to the Ficks dated December 9, 1994, Miller explained where the pickup/dropoff location was, explained when the bus would arrive, advised that the busdriver must be notified at least 1 day in advance when Preston would be riding, and noted that reimbursement would be limited from the Fick home to the pickup/dropoff location. The letter included a check for $87.36, which represented the 4 days of transportation expenses the appellants agreed to reimburse. The Ficks returned the check to Miller uncashed. The Ficks filed timely reimbursement claims with the appellants covering transportation expenses from December 1, 1994, through January 31, 1995, which the appellants did not act upon. The Ficks have never utilized the proposed pickup/dropoff location.

On January 13, 1995, the Ficks petitioned the Holt County District Court to issue an alternative writ of mandamus to order the appellants to (1) pay mileage reimbursement to the Ficks at the statutory rate for each day Preston Fick had already attended Chambers High School (see Neb. Rev. Stat. § 79-490(2)

(Reissue 1994) (current version at Neb. Rev. Stat. § 79-611(2) (Supp. 1997)) and (2) in the future, either pay mileage reimbursement to the Ficks for each day Preston and their younger children attend Chambers High School or provide transportation for the entire trip between the high school and the Fick residence. After a bench trial on stipulated facts, the trial court (1) dismissed the petition as to the Ficks' claims for the months of August through November 1994; (2) granted the petition for writ as to claims filed for December 1994 and January 1995, ordering the appellants to pay the Ficks' claims for those months once the appellants determined the mileage claimed was actually and necessarily traveled; and (3) granted the petition for writ as to claims for the months of February 1995 and all months thereafter, including claims regarding the Ficks' younger children, ordering the appellants to either provide free transportation to the Ficks' children from a location at or near the Fick residence, or promptly pay claims the Ficks make for reimbursement once the appellants determine the mileage actually and necessarily traveled. Payment for prior and future claims was to be made for the full distance between the Fick home and the high school, less 3 miles (see *id.*), and thus "without regard to the 'split' transportation approach adopted by the defendants on December 8, 1994."

The appellants filed an appeal with the Nebraska Court of Appeals. The Ficks cross-appealed. This court, sua sponte, removed the matter from that court's docket and dismissed the appeal for lack of jurisdiction, because the trial court's judgment left attorney fees "to be determined in a supplementary proceeding at a later date" and thus was not a final, appealable order. *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997). The trial court ordered that the appellants pay the Ficks $7,478.91 for attorney fees and costs. The appellants again filed an appeal, and the Ficks cross-appeal.

## II. ASSIGNMENTS OF ERROR

The appellants contend the district court erred in (1) finding that the appellants have a legal duty imposed by law to either provide the Ficks free transportation or reimburse the Ficks for mileage claims, (2) finding that the appellants had a clear duty

to act by either providing the Ficks free transportation or reimbursing the Ficks for mileage claims, and (3) issuing a writ of mandamus where there was "a plain and adequate remedy at law." On cross-appeal, the Ficks assign as error the district court's dismissal of the petition for writ as to their mileage claims for the months of August through November 1994.

## III. SCOPE OF REVIEW

Mandamus is a law action. It is an extraordinary remedy and not a writ of right; a grant or denial of mandamus is within the trial court's judicial discretion. See, *State ex rel. Heil v. Jakubowski*, 151 Neb. 471, 38 N.W.2d 26 (1949); *State, ex rel. Cary, v. Cochran*, 138 Neb. 163, 292 N.W. 239 (1940). In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997); *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998); *State ex rel. Scoular Prop. v. Bemis*, 242 Neb. 659, 496 N.W.2d 488 (1993). Both statutory interpretation and the construction of a contract are matters of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. See, *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997); *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996).

## IV. ANALYSIS

### 1. APPEAL

The primary issue in this appeal is whether the appellants have a clear legal duty *imposed by law*. The appellants argue they have no clear duty imposed by law because, first, no such duty exists within the relevant statutes and, second, the affiliation petition is merely a contract and thus cannot be a source of duties imposed by law.

Mandamus is an extraordinary remedy issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of law. Neb. Rev. Stat. §§ 25-2156 and 25-2157 (Reissue 1995); *State ex rel. Garvey v. County Bd. of Comm., supra; State ex rel. Scoular Prop. v. Bemis, supra.* To warrant the issuance of an alternative writ of mandamus to compel the performance of a legal duty to act, the duty must be imposed by law and the duty must be clear. *State ex rel. Mercurio v. Board of Regents,* 213 Neb. 251, 329 N.W.2d 87 (1983).

(a) Duty Imposed Through Statute

The appellants argue that the language of § 79-611(4) provides discretion and thus does not impose a legal duty upon them. The Ficks argue that § 79-611(4) imposes a legal duty upon the appellants to provide transportation or reimbursement of transportation expenses, specifically asserting that the word "may" really means "shall." We agree with the appellants that no legal duty exists under § 79-611(4).

Section 79-611(4) states: "An affiliated high school district may provide free transportation or pay the allowance described in this section for high school students residing in an affiliated Class I district." Regarding statutes, "[u]nless such construction would be inconsistent with the manifest intent of the Legislature . . . [w]hen the word may appears, permissive or discretionary action is presumed." Neb. Rev. Stat. § 49-802 (Reissue 1993). Interpreting "may" in § 79-611(4) as discretionary would not be inconsistent with the intent of the Legislature. The Legislature used "shall" and "may" in the same statute to describe the effect of particular terms. Use of both words in close proximity makes it clear "the Legislature understands the distinction between these words and intended each to mean what it says." *State ex rel. Shepherd v. Neb. Equal Opp. Comm.,* 251 Neb. 517, 528, 557 N.W.2d 684, 692 (1997).

Legislative history also indicates that discretion was intended. The pertinent sentence in § 79-611(4) originated from

1990 Neb. Laws, L.B. 259. L.B. 259 as originally introduced provided that an affiliated school district *shall not* provide free transportation or reimbursement to an affiliated Class I district. The Legislature's Education Committee advanced the bill with a proposed amendment to change the sentence to state that an affiliated school district *shall* provide free transportation or reimbursement. Legislative Journal, L.B. 259 AM0800, 91st Leg., 1st Sess. 1115 (Mar. 14, 1989). On the floor of the Legislature, the committee's amendment was amended to state that an affiliated high school district *may* provide free transportation or reimbursement. Legislative Journal, L.B. 259 AM2091, 91st Leg., 2d Sess. 224 (Jan. 9, 1990). The Legislature then adopted the committee amendment into the bill. *Id.*

Interpreting "may" in § 79-611(4) as discretionary means an affiliated school district may or may not provide free transportation or reimbursement at the district's discretion. The statute's language did not change when the appellants accepted the Inman School District affiliation petition. This court has stated many times that mandamus may be issued only to compel the performance of a purely ministerial act or duty. *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998); *State ex rel. Scoular Prop. v. Bemis*, 242 Neb. 659, 496 N.W.2d 488 (1993).

Notwithstanding the above analysis, the Ficks argue that "may" in § 79-611(4) should be interpreted as "must" based upon a reading of § 79-611(4) in conjunction with Neb. Rev. Stat. § 79-4,102 (Reissue 1996). Section 79-4,102 states in pertinent part:

> (1) For purposes of eligibility for or entitlement to any educational service or program, any student residing in an affiliated Class I district who is enrolled in the high school program of an affiliated school system shall be considered to be a resident of the Class II, III, IV, or V district which is part of such affiliated school system. Such student shall be treated for purposes of any educational service, including special education services, extracurricular programs, and other school-sponsored activities, as if he or she were a resident student of the high school district.

The phrase "educational service or program" is not defined in any relevant statute, and this court has not interpreted § 79-4,102. The Ficks argue that "educational service or program" includes transportation. The Ficks argue that § 79-611(4) is simply a clarification that in providing transportation to affiliated Class I district students, the affiliated school district may provide either free transportation or reimbursement, but must provide one or the other.

Rules of statutory construction direct that §§ 79-611(4) and 79-4,102 should be construed and considered together to give effect to the legislative intent, especially because both originated from L.B. 259 and relate to the same subject matter. See *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). Reading §§ 79-611(4) and 79-4,102 together, however, does not lead to the conclusion that "educational service or program" includes transportation.

If "educational service or program" is interpreted to include transportation, then any statute that directs a school district to provide transportation to its own high school students would have equal applicability to affiliated Class I district students. Such a statute existed when L.B. 259 was enacted. Section 79-611, which was found at § 79-490 (Reissue 1987) at the time L.B. 259 was enacted, states:

> (1) The school board or board of education shall either provide free transportation or pay an allowance for transportation in lieu of free transportation as follows:
>
> . . . .
>
> (c) When a student attends a secondary school in his or her own Class II or Class III school district and lives more than four miles from the public schoolhouse.

Section 79-611(1) provides a school board *shall* provide either free transportation or reimbursement to its own high school students. With substantively identical language in § 79-490, the Legislature nonetheless enacted both the language of § 79-4,102 and the pertinent sentence in § 79-611(4). If "educational services" in § 79-4,102 is interpreted to include transportation, as the Ficks argue, the pertinent sentence in § 79-611(4) becomes superfluous. The appellants would already have a duty to provide Inman School District students either free transportation or

reimbursement through § 79-611(1). Effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *SID No. 1 v. Nebraska Pub. Power Dist., supra*; *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). We conclude then that "educational service or program" in § 79-4,102 does not include transportation.

Section 79-611(4) grants affiliated school districts the authority to provide free transportation, but neither creates any ministerial legal duty nor provides for the enforcement of any duty. The provision is necessary to provide school boards with the authority to bind their districts to terms like the Inman School District affiliation petition's paragraph 9. "Any action taken by a school board must be through either an express or an implied power conferred by legislative grant." *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 753, 566 N.W.2d 757, 759 (1997). A school board's actions beyond such limitations are void. *Id.* Without § 79-611(4), the terms in the affiliation petition would be expressly void because of Neb. Rev. Stat. § 79-605 (Reissue 1996), which provides that if a school board provides bus transportation to students outside of its district, a fee *shall* be charged each person transported.

(b) Duty Imposed Through Affiliation Petition

Having found that no ministerial duty to provide transportation or reimbursement to the Ficks is imposed by statute on the appellants, however, does not end our analysis. The phrase "duty imposed by law" is not synonymous with "duty imposed by statute." There are sources of law other than statutes. This court, in addition to duties imposed by statute, has approved mandamus to enforce duties imposed by city ordinance, *State, ex rel. Herbert, v. Anderson*, 122 Neb. 738, 241 N.W. 545 (1932); attorney code of ethics rules, *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990); and contracts for public franchises, *State, ex rel. City of Chadron, et al., v. Intermountain R. L. & P. Co.*, 110 Neb. 720, 194 N.W. 793 (1923), *vacated* 110 Neb. 727, 198 N.W. 572 (1924). Additionally, this court has stated that properly adopted regulations as well as city charters have the force and effect of

law. See, *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996) (regulations); *Mollner v. City of Omaha*, 169 Neb. 44, 98 N.W.2d 33 (1959) (charter is constitution of city); *State, ex rel. Herbert, v. Anderson, supra* (city charter has effect of statute). Accord *Aiken v. Radnor Tp. Bd. of Sup'rs*, 83 Pa. Commw. 190, 476 A.2d 1383 (1984) (enforcing clause in township charter with writ of mandamus).

If the Inman School District affiliation petition is "law," then the duties it creates may be enforced through mandamus. The appellants argue that the affiliation petition was only an "agreement" between the two school districts and so contractual remedies are the proper remedies to enforce the "agreement" rather than mandamus.

> Mandamus is not an appropriate remedy for the redress of private contract rights, and it follows as a corollary to that rule that the writ will not generally be granted to compel a public officer, corporation, or other respondent to perform a duty or obligation assumed by contract, as distinguished from one imposed by law.

52 Am. Jur. 2d *Mandamus* § 75 at 397 (1970). But that assumes the affiliation "agreement" is a contract. Accordingly, we must determine what the affiliation process is and its legal effects.

Beginning in 1990 with L.B. 259, the Legislature has aggressively exercised its plenary authority over school districts in an attempt to reorganize and consolidate small school districts. By 1992, the Legislature's goal was clear—to have all taxable property in the state within or at least affiliated with a school system that offers education in grades K through 12 by July 1, 1993. See § 79-426.28 (Cum. Supp. 1992). The mandate to Class I school districts like Inman School District was (1) merge or affiliate with larger, neighboring school districts on your own terms by February 1, 1993, or (2) be dissolved. See §§ 79-402, 79-402.03, and 79-402.17. Larger school districts like Chambers were permitted to reject an affiliation petition. However, the petitioning Class I district could repetition the school board of the other district, and if the school board or its voters rejected the petition again, a county school district reorganization committee would have a public hearing on the matter and was required to impose the affiliation petition upon the parties unless one of three and only three exceptions existed.

See §§ 79-402.14 and 79-402.15. Even if the exceptions applied, the county committee could still impose the affiliation petition upon the school district that twice rejected it. Thus, the Inman School District's "offer" and the appellants' "acceptance" of Inman's petition were illusory.

A party to a contract may rescind if the party is willing to pay damages. However, § 79-431 (Reissue 1996) provides only one express way for the Inman and Chambers School Districts to become unaffiliated—the dissolution of one of the districts. Arguably, the affiliation could be undone if the Inman School District began the petition process again, but that route is not discussed in the statutes.

Sections 79-402 et seq. (Reissue 1987 & Cum. Supp. 1992) (current version at § 79-413 et seq. (Reissue 1996)) never refer to the accepted petition as an agreement or contract. The statutes refer to the process as "affiliation," and once accomplished, the result is an "affiliated school system," not an agreement or contract. Neb. Rev. Stat. § 79-4,100 (Reissue 1996). The Legislature understands the use of the words "agreement" and "contract" in the education title of the statutes when that is what it is describing. See, e.g., Neb. Rev. Stat. §§ 79-470 and 79-746 (Reissue 1996). Rather, the statute expressly characterizes the affiliation process as a school district reorganization. Neb. Rev. Stat. §§ 79-433(1) and 79-434 (Reissue 1996). "Affiliated school system" is defined as "an ongoing association" of a Class I district with a district that provides grades K through 12 education "for the purpose of (a) providing a high school program serving the Class I district students and (b) maintaining tax support to finance such program." § 79-4,100. Services provided as part of the affiliation "may include student transportation." *Id.*

By statute, the affiliation petition has to provide for the geographical boundaries of the proposed affiliated school system. § 79-402.16 (Cum. Supp. 1992) (current version at § 79-427 (Reissue 1996)). The boundaries and population of the affiliated school system are now used to base distribution of state funding on. Neb. Rev. Stat. § 79-1003 (Reissue 1996). Property within the affiliated school system is taxed under one common levy to

fund the affiliated districts or affiliated portions thereof. Neb. Rev. Stat. § 79-1077(1) (Reissue 1996). The petitioning school district is required to list in the petition the "terms of the affiliation," including a description of how the two affiliated districts would coordinate elementary education and provision for the establishment and maintenance of an advisory committee consisting of members from the affiliated Class I district(s). § 79-402.16 and Neb. Rev. Stat. § 79-4,105.01 (Cum. Supp. 1992) (current version at § 79-427 and Neb. Rev. Stat. § 79-4,103 (Reissue 1996)). The advisory committee meets at least biannually with the affiliated high school district school board to coordinate elementary education between the districts.

The above analysis indicates that the accepted affiliation petition created a school system. New boundaries were created which controlled taxation and state aid. Such an affiliation effectively placed the affiliated Class I district within a district that offered grades K through 12 education. See § 79-426.28 (Cum. Supp. 1992). If the school board for the Chambers School District had rejected the Inman School District's petition, the Holt County School District reorganization committee may have had to impose the affiliation upon the Chambers School District, per the will of the Legislature. If the Inman School Board did nothing before February 1, 1993, the county reorganization committee would have been forced to dissolve the Inman School District and merge it with a neighboring district. See § 79-402.17 (Cum. Supp. 1992). The Ficks' children would then have been entitled to receive either free transportation or reimbursement at the statutory rate from the district in which they were merged. See § 79-611(1)(c) (Reissue 1996).

We conclude that the affiliation petition was not a contract. Instead, it created duties owed to the public which, like statutes, city charters, city ordinances, regulations, code of ethics rules, and public franchise contracts, have the effect of law.

Although the district court erred in finding that a ministerial duty imposed by law exists in § 79-611(4), a ministerial duty imposed by law upon the appellants does exist in the affiliation petition itself. However, that duty is different from what the district court found in § 79-611(4). The applicable duty in the affiliation petition is as follows: "Transportation shall be provided on the same basis to such Holt County School District No. 30

[Inman School District] as it is provided to residents of the applicable affiliated high school district 9-12 students or affiliated school system [Chambers School District]." The appellants must provide the Ficks' children free transportation to and from school; there is no option in the petition to provide only reimbursement, unless the appellants discontinue providing transportation to students residing in the Chambers School District. As to what "on the same basis" means, we simply note, as the district court did, that "on the same basis" means "at or near the [Ficks'] current place of residence" and that it certainly means something closer than a bus stop 18½ miles away.

The second assignment of error, that the appellants did not have a duty to provide either transportation or reimbursement to the Ficks, is a subpart of their argument that they did not have a legal duty imposed by law. Based upon our previous analysis of that issue, we reject the appellants' argument to the extent we have determined they have a clear duty imposed by law to provide the Ficks' children attending Chambers High School free transportation. The plain language of paragraph 9 of the accepted affiliation petition provides a clear legal duty upon the appellants—that they *shall* provide transportation "on the same basis" to Inman School District students as is provided to Chambers School District students.

The duty in the affiliation petition, however, does not provide an applicable duty to uphold the district court's writ of mandamus compelling the appellants to pay the Ficks' December 1994 and January 1995 transportation reimbursement claims. The petition does not provide a clear duty to reimburse transportation expenses to and from school, either as an option or as a remedy for nonperformance of providing actual transportation. Also, as we have already determined, no clear ministerial duty exists under § 79-611(4). For a writ of mandamus to issue, the Ficks must have a clear legal right to the relief sought and there must be a corresponding clear duty existing on the part of the appellants to perform the act in question. See, §§ 25-2156 and 25-2157; *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998); *State ex rel. Scoular Prop. v. Bemis*, 242 Neb. 659, 496 N.W.2d 488 (1993). The Ficks have the burden of proof and must show clearly and conclusively that they are entitled to the particular thing they ask and that the

appellants are legally obligated to act. See, *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997); *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997). The Ficks failed to show that they are clearly entitled to reimbursement of their transportation expenses and that the appellants were legally obligated to act.

The appellants finally argue that an adequate remedy in the ordinary course of law was available for the Ficks' claims upon which the district court issued a writ of mandamus. "Ordinary course of the law" includes both actions at law and actions in equity. *State ex rel. Greyhound Lines v. City of Omaha*, 227 Neb. 676, 419 N.W.2d 539 (1988); *State ex rel. Krieger v. Board of Supervisors*, 171 Neb. 117, 105 N.W.2d 721 (1960). As we have already determined, the Ficks do not have contractual remedies at their disposal, because there is no contract to sue upon. The affiliation statutes do not provide any special remedies.

## 2. CROSS-APPEAL

The Ficks ask that we reverse the trial court's dismissal of their petition for writ of mandamus as to their transportation reimbursement claims covering August through November 1994. They contend that mandamus is proper because it is a prompt, efficient remedy, and they should not be required to pursue a multiplicity of suits and other circuitous dilatory actions at law to obtain relief. They cite *State ex rel. Rittenhouse v. Newman*, 189 Neb. 657, 204 N.W.2d 372 (1973), in support of that proposition. Such an argument may be entitled to consideration if this court reached the issue of whether the Ficks have an adequate remedy in the ordinary course of law as to these claims. However, as to claims for reimbursement, the Ficks have not clearly and conclusively proved the first two elements required for mandamus to issue: (1) that they have a clear legal right to the relief sought and (2) that there is a corresponding clear duty existing on the part of the appellants to perform the act in question. As we previously determined, the only ministerial duties imposed by law relating to the appellants' obligations to the Ficks come from the accepted affiliation petition. The petition does not provide a clear duty to reimburse transportation expenses. Thus, for the same reason that we

reverse the district court's issuance of a writ as to the Ficks' reimbursement claims covering December 1994 through January 1995, we reject the Ficks' cross-appeal.

## V. CONCLUSION

As to the Ficks' request for relief for February 1995 and thereafter, we affirm the trial court's ultimate issuance of a writ of mandamus. However, because a ministerial duty is not imposed by statute, as the district court found, and instead a ministerial duty at law is imposed by paragraph 9 of the accepted Inman School District affiliation petition, we conclude that the writ should have issued to compel the appellants to provide transportation to the Ficks' children attending Chambers High School on the same basis as it is provided to residents of the Chambers School District, in accordance with paragraph 9 of the petition.

As to the Ficks' claims for reimbursement from December 1994 through January 1995, we reverse, and vacate the district court's order issuing a writ of mandamus to compel payment of those claims.

As to the Ficks' claims for reimbursement from August through November 1994 that the appellants denied, we affirm the district court's dismissal of the Ficks' petition for writ of mandamus.

We allow the Ficks $3,620 in attorney fees and costs.

AFFIRMED IN PART, AND IN PART REVERSED WITH DIRECTIONS.

WHITE, C.J., not participating.