GERALD KROLIKOWSKI ET AL., APPELLANTS, V. TOM NESBITT, SUPERINTENDENT, NEBRASKA STATE PATROL, ET AL., APPELLEES.
598 N.W. 2d 45

Filed August 6, 1999.   No. S-98-369.

Thom K. Cope, of Polsky, Cope, Knapp & Shiffermiller, for appellants.

Don Stenberg, Attorney General, and Carla Heathershaw Risko for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from an order of the district court for Lancaster County denying and dismissing the appellants' amended petition seeking a peremptory writ of mandamus. We conclude that the district court did not err in determining that mandamus does not lie and therefore affirm.

## BACKGROUND

The evidence consists of affidavits and documentary exhibits which were received without objection. The appellants are 15 carrier enforcement officers employed by the State of Nebraska. The original appellees are Ron Tussing, who served as superintendent of the Nebraska State Patrol at the time this action was initiated; Mollie Anderson, who served as the director of the Department of Administrative Services' state personnel division (DASSP) at the time this action was initiated; Allan L. Abbott, the director of the Department of Roads; Larry Primeau, the director of the Department of Administrative Services (DAS); David Heineman, the Nebraska State Treasurer; and the State of Nebraska. The appellants brought this action against each of these state officials, in both their individual and official capacities. After this appeal was argued and submitted, we sustained the appellants' motion to substitute Tom Nesbitt as the current superintendent of the Nebraska State Patrol for Tussing and Sherri Wimes as the acting director of the DASSP or her successor for Anderson.

Carrier enforcement officers are employees of the Nebraska State Patrol charged with the operation of weighing stations and

portable scales and the enforcement of laws relating to the size, weight, load, and registration of buses, motor trucks, truck-tractors, semitrailers, trailers, and towed vehicles operated on Nebraska highways. Neb. Rev. Stat. §§ 60-1303(2) and 60-1306(1) and (2) (Reissue 1998). In 1994, the Legislature amended § 60-1306 to expand the arrest powers of carrier enforcement officers to allow them to be armed while on duty. Pursuant to the Nebraska Classified System Personnel Rules & Regulations, Tussing submitted a current job description to the DASSP, of which Anderson was the director, for a review of the appellants' job classification. A classification review was then initiated.

Initially, an employee of the DAS, of which Primeau was then the director, recommended reclassification. However, at some point in the process, a specific request was made to the Legislature's Appropriations Committee for additional funding to cover the salary grade increases which would result from reclassification. The Legislature denied this request. Following this denial, the classification review process was terminated and a final reclassification decision was not made. The Nebraska Classified System Personnel Rules & Regulations provide for a classification reconsideration process and for classification appeals to the State Personnel Board. See 273 Neb. Admin. Code, ch. 6, §§ 007 and 007.01 (1993). The appellants did not utilize this process.

In their operative amended petition, the appellants alleged that the appellees had a "clear, unequivocal duty to re-classify their positions and pay them wages withheld since July 16, 1994, and in the future." They sought a peremptory writ of mandamus compelling the appellees to:

(1) Reclassify each Petitioner to their correct level, according to each individual's rank, into the correct classification as determined by the Personnel Department in 1994;

(2) Pay each Petitioner immediately, as well as in the future, the correct wages commensurate with that classification level, as they would have received had they been correctly re-classified at 0001 Hours on July 16, 1994;

(3) Pay each Petitioner all withheld wages and benefits, plus interest, since they began exercising their enhanced duties and responsibilities at 0001 Hours on July 16, 1994.

Each appellant submitted an affidavit setting forth his or her rank and an assertion that since July 16, 1994, he or she has been working and compensated at a lower classification and pay grade than the duties of the position demanded. The record also contains affidavits from Anderson, Tussing, and Abbott stating their positions as state officers do not provide them with authority to implement any pay increases absent an appropriation from the Legislature. In addition, Anderson's affidavit states that the director of the DASSP has the authority to delay implementation of any reclassification and would exercise her discretion to do so until such time as funding became available.

The district court determined that mandamus did not lie because the appellees had "not failed to perform a purely ministerial act or duty." This appeal followed, and we moved the case to our docket upon our own motion.

## ASSIGNMENT OF ERROR
The appellants assign that the district court erred in denying their petition for a writ of mandamus.

## STANDARD OF REVIEW
An action for a writ of mandamus is a law action, and in an appellate review of a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Teters v. Scottsbluff Public Schools*, 256 Neb. 645, 592 N.W.2d 155 (1999).

## ANALYSIS
Mandamus is an extraordinary remedy issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the

respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of law. Neb. Rev. Stat. §§ 25-2156 and 25-2157 (Reissue 1995); *State ex rel. Fick v. Miller*, 255 Neb. 387, 584 N.W.2d 809 (1998). In a mandamus action, the relator has the burden of proof and must show clearly and conclusively that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *Id.*

To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must exist at the time the writ is applied for, and (3) the duty must be clear. *State ex rel. Wal-Mart v. Kortum*, 251 Neb. 805, 559 N.W.2d 496 (1997). Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary. *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997). The general rule is that an act or duty is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *Id.*; *State ex rel. Wal-Mart v. Kortum, supra.* We have explained this in *Pratt*, 252 Neb. at 911, 567 N.W.2d at 187, as follows:

> " ' "[A] duty or act is ministerial . . . when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law. It is such an act as an official or agent is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning the propriety or impropriety of the act to be performed. . . ." ' "

Thus, mandamus will lie to compel the appellees to perform any act that is made mandatory on them pursuant to the personnel rules. However, it will not lie to compel performance of discretionary duties.

Title 273, chapter 6, of the applicable personnel rules are as follows:

> 001 Classification Plan. The classification plan is based on a systematic review and analysis of the duties and responsibilities of all positions in the State Classified

Personnel System. Classification is based on a variety of factors, including duties performed, the scope and level of responsibilities assigned, the nature and extent of supervision received and/or exercised, and the knowledge, abilities and skills required. All positions having similar duties and responsibilities are grouped into classes and are assigned to a salary grade.

002 Class Specifications. Specifications are maintained for each class. Specifications provide a title and description, typical duties and responsibilities, and knowledges, abilities and skills necessary for job performance. The duties outlined in the specification do not limit the assignment of other duties to a position.

. . . .

004 Agency Head Authority and Responsibilities. When significant changes in duties and/or responsibilities are made, or when a new position is created, the agency head shall submit a current job description to the Director of DAS State Personnel for classification review.

004.01 Understaffing. For the purpose of training, an agency head may understaff a position with an employee of a lower class within the same series. The duties and salary shall reflect the employee's classification. Ordinarily, an employee should not hold an understaffed position for more than one year. Positions that have been understaffed longer than one year shall be subject to review by the Director of DAS State Personnel.

005 Requests for Classification Reviews. Classification reviews may be requested by any of the following:

005.01 Employees may request a review of their classification at any time, provided that the position has not been reviewed by the DAS State Personnel Division in the previous six months. Requests are made by completing a job description questionnaire, reviewing it with the employee's supervisor and receiving supervisory remarks, and submitting it along with a letter requesting review to the agency head. Such letter shall contain a concise and specific statement as to why the employee believes the current classification assignment is inappropriate and the specific reasons

therefore [sic]; and a statement of the classification sought. The agency head shall have up to a maximum of forty-five work days to review such information and if necessary change the assignment of duties and responsibilities of a position and shall forward the employee's request to the Director of DAS State Personnel for review.

. . . .

005.03 The Director of DAS State Personnel may review any position at any time by requiring an employee to fill out a job description questionnaire. The Director of DAS State Personnel may access any information necessary for a classification review, including, but not limited to organizational charts, job descriptions, staffing reports and a personal visit to the employee at his/her workplace.

006 Reclassification. No position may be classified or reclassified without written authorization of the Director of DAS State Personnel. The decision of the Director of DAS State Personnel shall be implemented within the next full pay cycle after the written authorization, or at a later date if agreed upon by the agency head and the Director of DAS State Personnel, unless a reconsideration of the classification decision is requested (see 007). Any pay change shall be effective only from the date of final determination.

007 Classification Decision Reconsideration Process. Any employee or agency head may request reconsideration, in writing, within 15 workdays from notification of the classification decision to the Director of DAS State Personnel and shall explain in detail the reasons for such a request. The letter shall contain a concise and specific statement as to why the decision was inappropriate and the specific reasons therefore [sic]; and a statement of the classification sought. An employee request shall be forwarded through the agency head to the Director of DAS State Personnel. Implementation of the classification action including any pay changes, will be delayed until the reconsideration has been formally concluded. In the case of any pay change such change will be made effective the date of the appeal to the Board.

> 007.01 Classification Appeals to the State Personnel Board. If the employee or agency does not agree with the decision of the Director of DAS State Personnel, the decision may be appealed to the State Personnel Board. The purpose of the appeal to the State Personnel Board is to ensure that proper application of the State's classification methodology was utilized in the decision making process and the issues raised by the appellant were taken into consideration and that the information used in the decision making process was accurate and correct. The review of the Board shall be limited to the issues raised by the appellant in the request to the Director of DAS State Personnel for reconsideration of the classification decision. New evidence will not be allowed at this step of the review.

Pursuant to § 004, Tussing submitted a job description to Anderson for classification review and thereby fulfilled the only mandatory duty imposed on him or his successor under the rules. Thus, the determinative issue in the case is whether Anderson had a mandatory duty to reclassify the positions pursuant to § 006. If Anderson had such a duty, mandamus would lie to compel her successor to reclassify the positions. We conclude that she did not. We find nothing in the rules which required Anderson to adopt the recommendation of a DAS employee that the positions be reclassified. Under §§ 006 and 007, the decision whether to reclassify is vested exclusively in the director of the DASSP, subject to administrative review by the State Personnel Board. Read as a whole, the Nebraska Classified System Personnel Rules & Regulations pertaining to reclassification of positions support the averments in Anderson's affidavit that classification review does not necessarily result in reclassification and that the decision to reclassify a position is discretionary in nature. The rules require the director of the DASSP to review a variety of factors and make a subjective determination as to whether a particular position should be reclassified. Although the director's determination is subject to administrative review, the State Personnel Board is required to "show significant deference" to the director's decision and may set that decision aside only when it is found to be "arbitrary, capricious or contrary to rule or law." § 007.01J. Even when

overturned on these grounds, the matter is remanded to the director for a second decision which is final and binding. *Id.* If the director had an absolute ministerial duty to reclassify a position upon receipt of a request for a reclassification study, there would be no reason for a review process, which clearly gives deference to determinations within the legitimate scope of the director's discretion.

Responding to Anderson's averments that no reclassification involving a salary grade change can be implemented without budget approval and that the classification review of the appellants' positions was terminated when it became apparent that necessary legislative appropriations would not be obtained, the appellants argue that the rules do not specifically permit consideration of funding for potential salary increases in determining whether to reclassify a position. While this may be true, the rules also do not require the director of the DASSP to ignore the issue of funding in performing a classification review, and we are unwilling to conclude that Anderson had an absolute duty to make a decision involving the expenditure of public funds in a fiscal vacuum. As such, Anderson's successor also does not have such a duty.

Likewise, we find nothing in the record constituting clear and convincing evidence that the other appellees failed to perform a ministerial act or duty which could be compelled by mandamus. We agree with the district court that the actions which the appellants seek to compel in this action are duties of a discretionary nature and that therefore, mandamus does not lie.

## CONCLUSION

The record reflects that Tussing performed his ministerial duty of submitting a job description and request for classification review to the director of the DASSP. The appellants have not shown by clear and convincing evidence that Tussing or any other appellee or their successors failed to perform any other purely ministerial duty so as to entitle them to relief in the form of mandamus. Accordingly, we affirm the judgment of the district court.

AFFIRMED.